**DALLAS COUNTY LEVEE IMPROVEMENT DIST. NO. 3 v. AYERS et al. (No. 8859.)*

(Court of Civil Appeals of Texas. Dallas. Nov. 18, 1922. On Motion to Dismiss Appeal, Jan. 20, 1923. Rehearing Denied Jan. 26, 1923.)

1. Constitutional law ⬤➡289—Levees and flood control ⬤➡2—Statutory methods followed in creation of levee district and issuing bonds constitute due process.

The methods provided by Vernon's Ann. Civ. St. Supp. 1922, arts. 5584½–5584½tt, for the creation of a levee district authorized by Const. art. 16, § 59, constitute due process, and issuing bonds and levying a tax for benefits thereunder do not violate the due process clause of either the state or federal Constitution.

2. Eminent domain ⬤➡2(11)—Assessing benefits under acts providing for levee districts not taking property for public use in violation of Constitution.

Assessing benefits against land in levee district organized under Vernon's Ann. Civ. St. Supp. 1922, arts. 5584½–5584½tt, is not a taking of property for public use in violation of Const. art. 1, § 17.

3. Levees and flood control ⬤➡5 — Owners could not challenge validity of organization of levee district after standing by without objection until its completion.

Where the owners of land in a levee district organized under Vernon's Ann. Civ. St. Supp. 1922, arts. 5584½–5584½tt, stood by without seeking redress until after structures had been erected on the land, even though the land' was not condemned in accordance with the statutes prescribing the method of condemnation, no

---

right would exist to challenge the validity of the district on such ground.

**4. Evidence ☞83(1) — Presumption prevails that statutes for creation of levee district were complied with.**

In suit to enjoin a levee district from collecting taxes levied and assessed and the selling or attempt to sell additional bonds issued, where the petition did not deny that any act of the district from its organization or through subsequent proceedings was at variance with the terms of the statutes, the presumption prevails that every act complied with statutory directions.

**5. Levees and flood control ☞22—In absence of facts showing acts in creating levee district illegal, courts will not inquire whether assessments confiscatory.**

Where the propriety, necessity, and reasonableness of respective amounts assessed against different tracts of land were passed on in the commissioners' court prior to the levying of assessments in a levee district, that the amount of the assessments against the land to be paid in annual assessments through period of years for which bonds existed was $200 an acre did not present any question as to whether tax levied through such period for payment of assessments was confiscatory.

**6. Injunction ☞114(3)—Holders of first issue of levee district bonds necessary parties in action to enjoin later issue.**

Where bonds issued for the creation of a levee district had been sold, in suit to enjoin a later issue for completion of the district the owners of the first bonds were necessary parties.

On Motion to Dismiss Appeal for Want of Jurisdiction.

**7. Appeal and error ☞797(2)—Appeal not dismissed, after hearing and decision on rehearing, because intervener was not made obligee in bond.**

Where there was nothing in the record to show that an intervener was a party to the cause, a motion to dismiss the appeal, made after disposition on original submission and after decision on motion for rehearing, based on ground that intervener was in fact an interested party, who was by the court made a party to the cause, but who had not been made an obligee in the appeal, must be denied, as in any event such failure to make a party an obligee does not call for dismissal, but amended bond is permitted.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action for injunction by Sam Ayers and others against Dallas County Levee Improvement District No. 3. From an order refusing to dissolve a temporary injunction, defendant appeals. Reversed and rendered.

E. E. Hurt and Gresham & Willis, all of Dallas, for appellant.

Clark & Clark and Bird & Bird, all of Dallas, for appellees.

HAMILTON, J. This is an appeal from an order of the district court of Dallas county refusing to dissolve a temporary injunction. The order granting the temporary injunction is an ex parte order entered upon the sworn petition therefor filed by appellees.

The appellant levee district was created under the provisions of chapter 2A of title 83, Vernon's Ann. Civ. St. Supp. 1922, which is comprised in articles 5584½ to 5584½tt, inclusive. The creation of such levee improvement districts is specially authorized by section 59 of article 16 of the Constitution of Texas, which was adopted as an amendment to the Constitution in 1917.

Dallas County Levee Improvement District No. 3 was organized and exists under the statutory provisions above cited, all of which, from time to time, were enacted under the authority of the section of the Constitution above named.

The verified allegations disclose that the levee district consists of 3,300 acres of land, of which 2,210 acres is comprised in appellees' ownership. The regularity of the formation of the levee district in conformity with statutory provisions and requirements is conceded, and it appears that when the levee district was formed the state reclamation engineer, under the requirements of the statute, estimated the cost of the levee improvements and the first two years' maintenance thereof to be $160,000. An election was held in the district for the purpose of determining whether or not the levee district, as a corporation and body politic, should issue its bonds for the purpose of realizing the estimated amount necessary for the construction and maintenance of the improvements. That the election was held in conformity with the provisions of the statutes providing for and regulating such elections, and that only votes qualified under the provisions of the statute to vote participated in the election, is not challenged by appellees. The bonds of the levee district thus provided were issued and sold and, with the proceeds of such sale, the work of constructing the improvements in the levy district was proceeded with. The $160,000 acquired by the levee district through the sale of these bonds became exhausted while the improvements were in course of construction. Appellees allege that the $160,000 derived from the bond issue above mentioned was squandered and wasted by the board of supervisors of the levee district who had control of the construction of the levee district and the expenditure of the money under the provisions of the statute.

For the purpose of obtaining additional funds with which to complete the construction of the work in the levee district, a second election was held in conformity with the provisions of the statutes, at which election the issuance of additional bonds in the

amount of $114,000 was authorized. There is no allegation made that the $114,000 was not properly estimated in conformity with the provisions of the law under which the levee district was created, or that the election was not held in strict conformity therewith, and that other than valid votes were cast.

It is alleged that the board of supervisors entered an order with reference to the $160,-000 bond issue which recited that according to the maps, profiles, and estimates made by the reclamation engineer, such amount of bonds was necessary and proper to meet the cost of the proposed improvements and the maintenance thereof for not less than two years. The allegation is made that this order entered by the board of supervisors induced the commissioners' court of Dallas county, and also appellees, to approve the first issue of bonds.

It was alleged that the assessment made against each piece of property was made in conformity with the statutory provisions controlling and governing the method of levying the tax upon each respective tract of land according to the benefits to accrue to it from the building of the levee. It was alleged that the $114,000 bond issue was wrongful, unlawful, and contrary to the provisions of the statute; and it was also alleged that appellant at the time this second bond issue was authorized knew that there could be no benefits upon which to base and justify this bond issue for the taxes to be levied for the payment of it, and it was alleged that it exceeded the limits fixed by law. No facts are recited in the petition upon which to base the conclusions contained in these last allegations.

It was alleged that, notwithstanding the fact that appellant had wasted the $160,000 realized from the first bond issue and had failed to build the levee so as to protect the lands contained in it from overflows, the taxes imposed in payment of the bonds are confiscatory. And it was further alleged that, notwithstanding all the facts, appellant was threatening to file many suits against all the landowners in the district to collect the taxes alleged to be null and void, and all of which taxes the landowners were refusing to pay for the reason that they were confiscatory.

The prayer was for an injunction to prevent appellant and its representatives from attempting to collect, by suit or otherwise, any of the taxes levied and assessed for the payment of the $160,000 bond issue, and enjoining the selling, or the attempt to sell, the bonds of the $114,000 issue. There was also a prayer for removal of cloud from the title to the lands, and for general relief.

Appellant, in answer to the petition upon which the injunction was granted, filed various exceptions to it and alleged that each of the bond elections was regular and in strict conformity with the provisions of the stat-ute authorizing such bond issues, and also alleged that the appellees, themselves, through their own votes and action, caused the bonds to be issued and ratified the act of issuing them after they were issued, and are accordingly estopped to assert any illegality as to either of the bond issues. It was alleged that after the first bond issue had been authorized in the manner provided by law and the bonds issued thereunder had been sold and the proceeds expended in the work of constructing the levee, it was found to be necessary, in order to render the $160,000 bond issue of value and to complete the construction of the levee, that the second bond issue should be made. It was alleged that all the steps precedent to the election for the issuance of $114,000 bonds had been regularly taken in strict conformity with the terms of the law; that appellees had participated in and approved all of such precedent steps; that the election had been lawfully held and the bonds validly authorized thereunder; that no contest or other proceeding provided by law had been resorted to by appellees, and that, accordingly, no equity existed in their behalf upon which to predicate relief by injunction as sought in this case.

The appeal is presented upon the sworn petition and the sworn answer filed in the court below. To sustain the judgment of the court appellees advance eight propositions, the substance of all of which may be epitomized in the proposition that the assessments levied against the various tracts of land as taxes to pay the annual interest on the aggregate amount of the bonds, and to provide necessary sinking funds, are grossly in excess of the benefits to the lands to be derived from the construction of the levee improvements, and are, accordingly, confiscatory and in contravention of the due process clause of the state and federal Constitutions, and also violative of section 17 of article 1 of the state Constitution, which inhibits the taking, damaging, or destroying any person's property for public use against such person's consent without adequate compensation being made.

The petition for injunction and the answer filed by appellants, both of which are verified, contained assertions of fact which, we think, clearly reveal that the order of the court granting the injunction and the order refusing to dissolve it were improvidently entered. Section 59 of article 16 of our state Constitution expressly authorizes the creation of such levee districts as that involved in this litigation and also explicitly authorizes the issuance of bonds and the levy of taxes to provide for the payment of the interest thereon as well as for a sinking fund. Articles 5584½´ to 5584½tt of Vernon's Ann. Civ. St. Supp. 1922, enacted under the authority of the above-named section and article of the Constitution, warrant each and all the steps taken by and in behalf of the

levee district complained against by appellees. Furthermore, initially, at least a part, if not all, of appellees must have approved and authorized each of the steps complained about. This is necessarily so because appellees, under their own allegations, have more than two-thirds of the entire acreage comprehended within the confines of the district. A proposition to create the district could not have been presented to or considered by the commissioners' court unless the petition therefor had been signed by the owners of more than one-half of the acreage which was to be included in the district. Article 5584½a, Vernon's Ann. Civ. St. Supp. 1922.

When such petition is presented to the commissioners' court or the county judge as provided in the above-cited article of the statute, a time and place at which it shall be heard before the commissioners' court must then be fixed, the date to be not less than 15 nor more than 30 days from the date of the order, and the county clerk or ex officio clerk of the commissioners' court is required to issue notices informing all interested persons of the time and place of the hearing and of their right to appear and either contend for or contest the formation of the district, etc. The state reclamation engineer is required by the law to attend the hearing, examine the proposed district, and do whatever may be necessary to enable him to determine "the necessity, feasibility and probable cost of reclaiming the land of such districts, * * * together with the costs of organizing such district and the maintenance thereof for a period of two years. * * *" He is also required to file a written report and to give the commissioners' court whatever information may be necessary. Article 5584½b.

Article 5584½bb provides that at the time and place set for the hearing of the petition, the commissioners' court shall hear any and all issues relating to the creation of the proposed district; and also provides that any person interested may appear before the court, either in person or by attorney, and contest the creation of the district and offer testimony pertinent to any issue. Such court is given exclusive jurisdiction under this article to determine all issues in respect to the creation of the district, and of all subsequent proceedings in respect to the district if its creation is authorized.

After the district has been organized in accordance with the provisions of the statute, and the supervisors and engineer have been selected in conformity therewith, then the commissioners' court appoints three disinterested commissioners, who are known as "commissioners of appraisement," possessing the qualifications prescribed by article 5584½fff.

The manner of assessing benefits and damages is prescribed in detail, and the filing of a report is prescribed, and it is provided that such report shall show the owner of each tract of land, the assessment made on and concerning it, the amount of damages, and the amount of benefits assessed with reference to it, etc. Article 5584½gg.

Article 5584½ggg prescribes in detail the method of giving notice to each landowner affected, of the time and place of the meeting of the board to be held after the filing of the report as to assessments of benefits and damages, in order that each person whose property is affected may appear before this board and file exceptions to any or all parts of the report.

After a hearing it is the duty of the board to enter a final decree or order, which is made conclusive by the statute. Article 5584½h.

The findings of the commissioners of appraisement with reference to damages and benefits to each tract of land in the district after they have made their preliminary investigation in connection with an actual view of all the land in the district, and in connection with evidence received and considered under the advice of the engineer, and also after the final hearing provided by articles 5584½ggg and 5584½h, are made the basis of the taxes levied against each tract of land.

It is provided that no bonds can be issued or taxes levied for their payment unless a petition signed by the owners of more than one-half of the land to be taxed in the district is presented to the commissioners' court or to the county judge, praying for an election to be held for the purpose of determining whether such bonds shall be issued and such taxes levied; and it is further required that after such petition is granted by the commissioners' court, then a majority of the property taxpayers residing in the district must vote, at an election held for that purpose for the issuance of the bonds and the levy of a tax for the payment of the interest and sinking fund. Provision is made for notice of an order for the election, for the conduct of the election, and for returns, canvass and declaration of the result. Articles 5584½i to 5584½kk.

From the foregoing it is apparent that neither bonds can be issued nor taxes levied for their payment except in conformity with the plain provisions of the law regulating and controlling these matters. It is apparent to the same extent that not only did the possibility of creating the district upon the petition of the owners of more than half of the acreage in the district, but that the issuance of the bonds and the levy of the taxes for their payment also depended upon a similar petition signed and presented by the owners of a majority of the acreage in the district. Such owners necessarily included at least a part of the appellees in this case, because, under the allegations of their sworn petition, they owned 2,210 acres of the entire 3,300 acres comprised in the district.

Since appellees own more than two-thirds of the land in the district they, under the very terms of the law, could have prevented its creation, and after its creation they also could have prevented the ordering of an election to authorize either bond issue.

The steps to be pursued from the inception of levee districts to the completion of every element of construction are prescribed with the utmost detail in the directions which the statutes embody. These details comprehend with extraordinary particularity every act of organization, methods of procedure, means of ascertaining and imposing the burden of costs upon lands in relation to benefits, etc., and setting forth the only means of issuing bonds and raising taxes against lands benefited to discharge the obligations of such bonds when sold and to maintain the levee district. Full and ample methods of contesting the creation of the districts, even at the instance of a single complainant, are provided; the law definitely fixing the course of procedure in this respect. Likewise, thorough provision for a hearing and contest of petitions for bonds and taxes is provided. The petition in the instance of creating the levee district and also in that of seeking the issuance of bonds and levying taxes must not only pass the scrutiny of the commissioners' court in the light of all facts those at interest desire to present, after ample notice has been given, as well as in the light of an engineer's report, but then only after an election held under the safeguard of the election law and participated in only by property owners in the district had been ascertained lawfully to have authorized the indebtedness and liabilities, can such be asserted against any land in the district. Any interested person whomsoever is explicitly authorized, any time within 15 days after final approval of the reclamation plan by the reclamation engineer, to institute suit in the district court and there seek his relief for any injury to his interests flowing from approval and adoption of the reclamation plan. If the decision of the trial court is adverse to his contentions, he may appeal to the Court of Civil Appeals. Such are the plain provisions of the law as to this appeal. Article 5584½ss, Vernon's Ann. Civ. St. Supp. 1922.

[1] Thus the rights and interests of land holders are abundantly hedged about, through the provisions of the law and repeated hearings, including every act affecting their welfare, are provided in their behalf. The law points out these specific prescriptions for relief, and they must be pursued to their exhaustion by any aggrieved owner of land in the district. The methods provided by the statutes, presumably followed in the acts of which appellees complain, constitute due process of law, and issuing bonds and levying a tax for assessed benefits under the provisions of the law do not violate the due process clause of either the state or federal Constitution.

[2] Nor is there involved in any such acts an infraction of section 17 of article 1, Constitution of Texas. Assessing benefits against land in the district under the statutes is in no sense a taking of property for a public use in violation of the Constitution. While the levee district is a public corporation, its existence and its functions are primarily for the benefit of individuals, to wit, the landowners of the district. The purpose of its creation and existence is to increase the productivity of privately owned land and render more valuable to the owners of the respective individual tracts of land included in it. Of course, the public has an interest in the construction of levees for the reclamation of agricultural lands because the whole public indirectly shares the benefits of increased production. However, the fact remains that those directly interested and those directly benefited are the owners of the lands, themselves. Assessments of benefits against the lands are not made in the interest of the public, but in the interest of a group of private individuals. The public has an interest in, but is not affected by, such use. This being true, it is apparent that proposition to the effect that the construction of the levee and the assessment of benefits against the lands constitutes, in any sense, a taking of private property for public use, is altogether untenable.

[3] Appellees' proposition that the work of constructing the levee was done upon land which was not condemned in accordance with the provisions of the statutes prescribing the method of condemnation and that therefore the creation of the levee district is rendered void, is altogether unsound. In the first place, the petition does not disclose that lands belonging to appellees were taken without strict conformity with the prescribed method of condemnation; but even if it conclusively appeared that land had been so taken, and that the owners had stood by without seeking redress until after structures had been erected on the land, no right in them would exist to challenge the validity of the levee district on such ground. At most, they would be confined to their remedy for damages accruing from such misappropriation after having thus indulged in neglect and delay, and could not be heard to question the validity of the levee's existence under such circumstances.

[4] A petition for an injunction in a suit of this character should not only contain clear and explicit allegations of positive acts of injury, but such petition should, with equal clearness and explicitness, negative every fact which might appear to exist to justify the acts and conduct against which complaint is directed. The petition in this case does not deny that any act done by and in behalf of the levee district from its

organization in the first instance through all subsequent proceedings to and including the authorization, issuance and sale of the first installment of bonds, as well as the authorization and issuance of the second installment of bonds, was at variance with or was not in conformity with the terms of the statutes. As the case is presented in this attitude, the presumption must prevail that every act complied with the statutory directions.

[5] Because the amount of the respective assessments against the land to be paid in annual assessments through the period of 30 years for which the bonds exist is $200 per acre does not present to this court any question as to whether or not the tax to be levied through such period for the payment of such assessments is confiscatory. The propriety, the necessity, and the reasonableness of the respective amounts fixed against the different tracts of land were passed upon in the proper forums prior to the levying of such assessments. The final decisions arrived at and expressed in the assessments levied were conclusive. The courts of the land, under such circumstances, will not inquire into the question of whether or not different actions of the various agencies prescribed in the terms of the statutes resulting in the fixing of such assessments amounted to confiscating property, especially in the absence of allegations of facts constituting such acts to be illegal or fraudulent and capricious.

In every feature of the acts and conduct involved in the complaint made by appellees there was the exercise of judgment and discretion under the safeguard of and in conformity with the provisions of the statutes, which exercise of judgment and discretion precludes the claim of appellees and forecloses their right to any relief before a court under their allegations.

Some, if not all, of the appellees, either among themselves or in conjunction with other landowners in the district in the exercise of their judgment favorably to the creation of the levee district, executed and presented to the commissioners' court of Dallas county a petition for the creation of the district. Through the deliberate process provided by the statutes, the reclamation engineer made his estimates and investigation and filed his report thereof with the commissioners' court. The commissioners' court thereupon went through the further deliberate process of exercising its discretion and judgment in the light of the petition, the engineer's report, and other facts as to whether or not the interest of these appellees and others would be conserved by the creation of the district. The commissioners of appraisement, with the assistance of an engineer, estimated the benefits to accrue to the various owners of land and expressed the result of their discretion and judgment in the terms of their final action. This was followed in the instance of each bond election by the further expression of the judgment, discretion, and desire of the owners of the greater portion of the land comprised in the district in the presenting of petitions for such elections as a necessary prerequisite to their being held. The taxpaying voters at the elections which followed the granting of such petitions by the commissioners' court in the exercise of their discretion and judgment, based upon the landowners' petitions, gave approval and confirmation of the desires and judgment of the owners of the majority of the land in the district in voting that the bonds should be issued and the tax levied. The law amply provides for various hearings of all complaints and grievances by interested parties as these processes were being invoked and carried out. The verified pleadings do not disclose that appellees, or any of them, sought to avail themselves of the benefits of such hearings. None of them challenged the legality of any of the elections in the manner provided by law, and none of them instituted a suit in the district court as provided by the law against the plans and estimates made the basis of the bonds in either instance on the ground that injury would be inflicted.

[6] In passing we call attention to fundamental error, in no way suggested by either party, which, in any event, would require that the judgment be reversed. It is that the first issue of bonds having been sold, the owners of them, whose interests were most vitally affected by the judgment, were not made parties to the proceeding. King v. Commissioners' Court et al., 10 Tex. Civ. App. 114, 30 S. W. 257.

In the light of the above review and analysis of the steps taken by the levee district under the application of the provisions of the statute, which were enacted in conformity with section 59 of article 16 of the Constitution of Texas, we think it apparent that none of the complaints made by appellees are well founded, and, accordingly, the judgment of the court below is reversed and the injunction dissolved.

Reversed and rendered.

### On Motion to Dismiss Appeal for Want of Jurisdiction.

As the record in this case was presented to this court, and as it now exists, it reveals that only the appellant, Dallas County Levee Improvement District No. 3, and the appellees, Ayers et al., are parties litigant. The record in no way contains any intimation that there was ever any other party to the suit.

[7] The opinion of the court as originally written and handed down contained no reference whatsoever to the fact that the record disclosed that the owners of the first issue of bonds were not parties to the litigation.

In the opinion of the court as it was originally prepared and handed down, and as that opinion has continued on the part of the court, appellees were never entitled to an injunction; regardless of whether or not the owners of the bonds were made parties litigant.

A motion for rehearing was filed and overruled. While the motion for rehearing was pending, the original opinion of the court was amplified by the insertion therein of the paragraph next preceding the last, embodying the following language:

"We call attention to fundamental error, in no way suggested by either party, which, in any event, would require that the judgment be reversed. It is that the first issue of bonds having been sold, the owners of them, whose interests were most vitally affected by the judgment, were not made parties to the proceeding. King v. Commissioners' Court, 10 Tex. Civ. App. 114, 30 S. W. 257."

The motion for rehearing having been overruled, and neither the brief of either party to the appeal nor the record in any way intimating that the owner of the first bonds issued had been made a party, appellees' attorneys, in response to the paragraph of the opinion above copied as having been inserted while the motion for rehearing was pending, filed in this court a motion to dismiss the appeal, asserting that, while the record and the briefs of the respective parties in no way indicate that the bondholders were parties below, yet in truth and in fact they were parties, they having intervened and adopted the pleadings of the appellant. The case had been finally disposed of, both upon original submission and upon motion for rehearing, when the suggestion was made that we dismiss the appeal. There is no merit in the suggestion that the appeal should be dismissed because of lack of jurisdiction. The record before us conclusively reveals that this court has jurisdiction of the appeal. Although the holders of the bonds did intervene in the cause of action below, and adopt appellant's pleadings, as shown by the certified copy of the petition of intervention attached to appellees' motion to dismiss the appeal, filed as aforesaid after the cause had been finally disposed of, and motion for rehearing overruled, omitting the intervener from the record in no way affects our jurisdiction; that jurisdiction being just as complete, as the record is presented to us, as it would be with the petition of intervention embodied in it.

There is no basis for the contention, made by appellees, that the bondholders have an interest in the litigation adverse to appellant levee district, which now requires us to dismiss the appeal. Conceding that the intervention was allowed by the trial court, as contended by appellees, but not shown by the record, as above suggested, this would not constitute ground for dismissal of the appeal. If the record in the case conclusively revealed that the owner of the bonds was a party below interested adversely to appellant, instead of excluding any intimation to that effect, as it does, we then would not dismiss the appeal on the ground that it was not made a party to the appeal bond. We could do no more than merely require the filing of an amended appeal bond including it as an obligee. Oliver v. Lone Star Cotton Jammers' & Longshoremen's Ass'n (Tex. Civ. App.) 136 S. W. 508; article 2104, V. S. T. C. S.

The motion to dismiss is ordered stricken from the record.