**GOLDMAN et al. v. STATE. (No. 2936.)**

(Court of Civil Appeals of Texas. Texarkana. June 23, 1924. Rehearing Denied July 5, 1924.)

1. **Drains** ☞13—**District organized under defective petition held de facto corporation.**

Improvement district, petition for organization of which was defective, in that it was not acknowledged by owners of sufficient acreage, held nevertheless a de facto corporation.

2. **Drains** ☞14(4)—**Validity of incorporation of improvement district may not be collaterally attacked in proceeding to recover delinquent taxes.**

Validity of an improvement district, constituting at least a de facto corporation, may not be collaterally attacked in an action by the state to recover delinquent taxes assessed by the district.

3. **Drains** ☞18—**Regularity of election, whereat issuance of bonds authorized, may not be attacked in proceeding where purchasers not parties.**

In action to recover delinquent taxes levied by drainage district for purpose of paying outstanding bonds, wherein third persons, purchasers of the bonds, are not parties, regularity of election at which such bonds were authorized cannot be questioned.

Appeal from District Court, Delta County; W. F. Moore, Judge.

Action by the state of Texas, in behalf of itself and for benefit of Delta County Improvement District No. 2, against Abe Goldman and others. Judgment for plaintiff, and defendants appeal. Affirmed.

A. P. Park, of Paris, and Neyland & Neyland, of Greenville, for appellants.

Goree, Odell & Allen, of Fort Worth, and Rube S. Wells and C. C. McKinney, both of Cooper, for appellee.

HODGES, J. This suit was filed by the state in behalf of itself and for the benefit of Delta county improvement district No. 2 to collect approximately $2,000 in delinquent taxes. It is alleged that Delta county improvement district No. 2 was formed by authority of what is commonly known as the Canales Act, passed in 1918 for the reclamation of swamp lands. This act appears in Texas Complete Statutes of 1920 as articles 5107—267 to 5107—276. The district was organized under the provisions of chapter 2, title 83, of the Revised Civil Statutes. It is also alleged that after the organization of the district, an election was held which authorized the issuance of district bonds in the sum of $120,000, which were sold and are now in the hands of third parties; that a tax was levied to raise an interest and sinking fund for the retirement of those bonds at maturity. It is conceded that the taxes imposed have not been paid by the appellants, and there appears to be no dispute as to the amount due if any portion of the tax may be lawfully collected. It is also conceded that the appellants owned lands situated within the territorial limits of Delta county improvement district No. 2.

The suit is resisted mainly upon the ground that the district was not organized in accordance with the statutory requirements, and that no valid election had been held within the district authorizing the bond issue above referred to. These defenses will be more fully stated as they are discussed.

In a trial before the court a judgment was

rendered in favor of the state for the amount claimed.

In their answer the appellants attacked the .validity of the district upon the ground that the petition asking for its organization was not acknowledged by the owners of a majority of the acreage of the land to be included within the proposed district. The petition introduced in evidence was signed by 22 individuals claiming to be the owners of 1,772 acres of land.· The territory proposed to be included in the district consisted of 3,200 acres. The petition was acknowledged by the owners of only 1,170 acres. The statute bearing upon that subject is chapter 146, Acts of the 34th Legislature. (Vernon's Ann. Civ. St. Supp. 1918, arts. 5530, 5532). Section 1 provides that—

"The commissioners courts of the several counties of this state may thereafter create, establish.and define one or more levy improvement districts in their respective counties in the manner hereinafter provided."

Section 2 is as follows:

"Upon the presentation to the commissioners court of any county in the state of a petition signed by the owners of a majority of the acreage in a proposed levy improvement district, acknowledged by the petitioners before some officer authorized to take acknowledgments, praying for the establishment of a levy improvement district," etc.

[1] The appellants contend that, until the commissioners' court was presented with a petition signed and acknowledged by the required number of landowners, that court had no authority to proceed with the organization of a district; that a valid petition is essential to clothe the commissioners' court with jurisdiction to do any act toward creating an improvement district. , On the other hand, counsel for the state insist that the provisions of the statute requiring that such petitions be acknowledged is only directory and only for the purposes of furnishing the commissioners' court with proper information regarding the authenticity of the signatures to the petition. They further contend that, even if such requirement is jurisdictional, that defect in the petition cannot be raised in a collateral attack upon the validity of the corporate organization. If not conceded, it can hardly be denied that Delta county improvement district No. 2 was, at the time this suit was filed, a de facto corporation. The petition, even though it may have been defective, had been filed, and an order in regular form had been made and entered by the commissioners' court of Delta county creating the districct. · It further appears that thereafter an election was ordered and held to determine whether or not district bonds should be issued for the purpose of raising a fund to make the desired improvements; that such bonds were issued and were approved by the Attorney General of the state. Subsequent to the approval of the bonds a tax was levied upon the property lying within the limits of the district for the purpose of creating an interest and sinking fund for the payment of those bonds. In Brown v. Webb, 60 Or. 526, 120 Pac. 387, Ann. Cas. 1914A, 148, the court said:

"If an association assuming to act as a corporation has been so far organized in compliance .with a statute as to be a de facto corporation, it is the general rule that its existence as a corporation cannot be collaterally attacked, though its organization be so defective that the state might bring a direct proceeding against it to oust it from the exercise of corporate powers. Marsters v. Umpqua Oil Co., 49 Or. 374, 90 Pac. 151, 12 L. R. A. (N. S.) 825.

"By the weight of authority an association is a de facto' corporation within this rule, when the associates have, in good faith, attempted to organize as a corporation under a valid law for a lawful purpose, and have colorably or apparently complied with the requirements of the law, and afterwards assumed to exercise corporate powers under the law. Gilman v. Druse, 111 Wis. 400, 87 N. W. 557.

"The. failure to comply with the mandatory requirements of the statute in organizing a corporation will prevent the formation of a corporation de jure. This, however, does not necessarily prevent the formation of a de facto corporation. 'It is entirely settled,' , said the New Jersey court, 'that the corporate existence of such corporation de facto cannot be inquired into collaterally. * * * The legality of its corporate existence may be inquired into by the state, but not by any one else,' [citing authorities]."

[2] Tested by the rule announced above, Delta county improvement district No. 2 was a de facto corporation. If that be true, then it follows that the appellants cannot in a proceeding of this character attack the validity of its organization. The author of Corpus Juris, vol. 14, pp. 204–206, thus epitomizes the ruling of the ·courts upon that proposition:

"The general rule, supported by an almost unanimous concensus of judicial· opinion, and sometimes expressly declared by statute, is that the legality of the existence of a de facto corporation can be questioned only by the state in a direct proceeding, and cannot be collaterally attacked or litigated in actions or proceedings between private individuals or other corporations or between them and the alleged corporation itself.

"The doctrine in relation to de facto corporations is based upon the principle that the state, which alone has the power ·to incorporate, may waive irregularities in the organization of corporations, and, so long as the state remains inactive in the premises, others must acquiesce."

Numerous authorities are referred to in the notes following the language quoted. To those there cited the following may be

added: Brennan v. Bradshaw, 53 Tex. 336, 37 Am. Rep. 758; State v. Bank of Mineral Wells (Tex. Civ. App.) 251 S. W. 1107, 1113; El Paso v. Ruckman, 92 Tex. 86, 46 S. W. 25; Graham v. City of Greenville, 67 Tex. 62, 2 S. W. 742; Parker v. Harris County Drainage Dist. (Tex. Civ. App.) 148 S. W. 351; Wharton County Drainage Dist. v. Higbee (Tex. Civ. App.) 149 S. W. 380.

Counsel for appellants refer to a group of cases which hold that the sufficiency of the petition essential to invoke the jurisdiction of special tribunals may be inquired into in collateral proceedings. Among them is Parks v. West, 102 Tex. 11, 111 S. W. 726. In that case the attack was by injunction upon the validity of a school district, and the court held that it was proper to inquire into the constitutionality of the statute by virtue of which the district had been created. In this case the constitutionality of the act authorizing the organization of improvement districts is conceded, and the attack is upon the regularity of the proceedings which occurred under that law.

There are sound reasons why the rules commonly observed in determining the initial power of a special tribunal to take cognizance of a subject-matter lying within its potential jurisdiction should not be applied in collateral attacks upon the legality of a public corporation exercising govermental functions. Public convenience requires that as long as such a corporation is permitted by the state to exist and act as a corporate entity its acts should be treated as valid when within the scope of authority conferred upon corporations of that class. A judgment which nullifies the official acts of such a corporation, because of its irregular formation, should have the legal effect of annulling the organization itself. Such a result is required in order to prevent the confusion that might follow the rendition of possibly conflicting judgments based upon different legal conclusions by different courts. Where the invalidity of the corporation is raised collaterally, as in this instance, no judgment fixing its status can be rendered which will determine its power to continue to operate and function as a govermental agency. Its legal existence is not destroyed, but the defect must be set up in every other suit by the corporation seeking the enforcement of its legal rights. A judgment sus-

taining the defense urged upon that ground in this case would not be res adjudicata as to the illegality of the improvement district in any other suit. At most it would furnish only a precedent which might, or might not, be followed in similar suits. Public policy demands that, when a public corporation is adjudged to be invalid by reason of some defect in the organic procedure, adjudication should be decisive of that particular question in all other other suits by or against the corporation.

[3] Appellants also specially plead that the election authorizing the issuance of district bonds was invalid, irregular, and fraudulently conducted. The court sustained exceptions to the answer presenting that defense, and that ruling is assigned as error. It appears from the record that bonds to the amount of $120,000 had been issued, and that those bonds had been approved by the Attorney General, and were later sold to third parties. The holders of those bonds are not parties to this suit. It has been expressly held in a late case approved by the Supreme Court that the irregularity of such an election cannot be raised in a proceeding of this character. State v. Bank of Mineral Wells (Tex. Civ. App.) 251 S. W. 1107. In that case the court used the following language in disposing of that question:

"It appears that the bonds which were issued pursuant to the election held for that purpose were sold after examination and approval by the Attorney General of Texas, and that they are now in the hands of purchasers who are not parties to this litigation. The holders of the bonds, it seems, were impleaded, but were never cited and brought into court. They were not before the court so as to be affected by any judgment. In any event, such holders of the bonds would be necessary parties to a proceeding of this character and no judgment could be rendered which did not validly dispose of their rights. Dallas County Levee Imp. Dist. No. 3 v. Ayers (Tex. Civ. App.) 246 S. W. 1112 (writ of error refused)."

Appellants also contend that the indebtedness evidenced by the bonds exceeded 25 per cent. of the assessed value of the property subject to taxation in the district. That amount was the limitation fixed by the act of 1915, but in later law removed that limitation. The district has not exceeded the limitations as now allowed by law. The judgment will therefore be affirmed.