### MORTON et al. v. THOMSON et al.
### (No. 2196.)

Court of Civil Appeals of Texas. El Paso.
March 14, 1929.

Rehearing Denied April 4, 1929.

Lyle Saxon, of Dallas, for appellant.

Goree, Odell & Allen, of Fort Worth, for appellees.

WALTHALL, J. This case presents the consolidated suits brought by Lewis W. Thomson et al., residents of the state of Missouri, and the Commerce Trust Company, a Missouri corporation, against the Dallas county levee improvement district No. 1, of Dallas, Tex., to recover upon certain Dallas county levee improvement district bonds and interest coupons of said district No. 1.

The defendant, through its supervisors, answered in each case, to which the trial court sustained certain exceptions made the basis of the appeal; the facts at issue will later more fully appear.

The parties agreed to a statement of facts, waived a jury, and submitted the case to the court upon the pleadings and the agreed statement of facts. Plaintiffs dismissed their suits as to certain of said bonds and coupons sued upon.

The court entered judgment that certain of the bonds and coupons sued upon were barred by the statute of limitation of four years, and, except as to bonds and coupons upon which plaintiffs dismissed their cause of action, and except as the bonds and coupons held to be barred, judgment was entered for plaintiffs each respectively, for amount found to be due.

Defendant, Dallas county levee improvement district No. 1, presents this appeal.

#### Opinion.

A statement of the facts with reference to the organization of the drainage district in controversy, the issuance of the bonds by it, and the several acts of the Legislature

brought into question, we think will be helpful. Such statement found in appellees' brief is well stated and true to the record, and we appropriate such of it as we deem sufficient for that purpose.

Dallas county levee improvement district No. 1 was created by an order of the commissioners' court of Dallas county, Tex., entered on the 22d day of September, 1916, under the provisions of section 52, of article 3 of the Constitution of this state in force at that time, and under the provisions of the Levee District Act of 1915, providing for the creation of such districts by the commissioners' courts of the several counties in Texas "upon the presentation of the Commissioners' Court of any county in the State of a petition signed by the owners of a majority of the acreage in a proposed levee improvement district, acknowledged by the petitioners before some officer authorized to take acknowledgements, praying for the establishment of a levee improvement district, setting forth the necessity feasibility and proposed boundaries thereof, designating a name therefor," and after due notice of a hearing on said petition as fully provided for in the statute. Chapter 146, General Laws 1915, 34th Legislature, Regular Session. The order creating the district is set out in full in the statement of facts.

After the creation of said district it issued its bonds in the sum of $48,000 of date November 10, 1916, as per form set out in the statement of facts.

Thereafter, in 1917, said district issued a second series of bonds aggregating $2,000 of date August 10, 1917, as per form set out in the statement of facts, making a total of $50,-000 issued by the district as originally created under the Levee District Act of 1915, and section 52 of article 3 of the state Constitution.

At an election held on August 21, 1917, there was adopted what is known as the Conservation Amendment to the Constitution, which now appears as section 59(a), (b), (c), of article 16 of the Constitution.

At the Fourth Called Session of the Thirty-Fifth Legislature, held in 1918, there was adopted an act authorizing the creation of levee improvement districts under the provisions of the Conservation Amendment above referred to, commonly known as the "Canales Act." Chapter 25, General Laws 1918, Thirty-Fifth Legislature, Fourth Called Session. The Canales Act provided for the creation of levee improvement districts under the provisions of the recently adopted Conservation Amendment, and also provided that "any * * *. levee improvement district heretofore organized * * * under the laws of this State, may, by a petition in writing to the Commissioners' Court, on hearing before such court, as provided in Sections 2, 3, 5, and 6, of Chapter 146, Acts of the 34th Legislature [the Levee District Act of 1915 here-

tofore referred to], upon order of said court to that effect, entered of record, become such conservation and reclamation district without change of name or impairment of its obligations." Section 9, chapter 25, Acts Fourth Called Session, Thirty-Fifth Legislature, 1918, p. 42.

There was passed at the same session of the Legislature another act, known as the "Laney Act," being chapter 44 of the Acts of the Fourth Called Session of the Thirty-Fifth Legislature, 1918, p. 97, which also provided for the creation of levee improvement districts, under a plan of special assessment according to benefits, rather than an advalorem tax plan as provided for in the act of 1915.

After the passage of the Laney Act, Dallas county levee improvement district No. 2, which had been created under the act of 1915, and had brought itself within the terms of the Conservation Amendment by the method provided in the Canales Act, sought to issue bonds under the Conservation Amendment. The Attorney General declined to approve the bonds in order to test the validity of said act, and writ of mandamus was applied for to require the approval of the bonds, and in the case of Dallas County Levee Imp. Dist. No. 2 v. Looney, 109 Tex. 326, 207 S. W. 310, the Supreme Court, in an opinion written by Chief Justice Phillips, upheld the validity of the Canales Act, and held that it was not repealed by the later passage of the Laney Act, and that both were outstanding valid acts.

In pursuance of the method provided for by the Canales Act, by an order of the Commissioners' Court of Dallas county entered on the 8th day of July, 1918, in response to a petition signed by the owners of a majority of the acreage of Dallas county levee improvement district No. 1, said district was created a "conservation and reclamation district as provided by law, without change of name or impairment of its obligations and that it may avail itself of the constitutional provisions above described (Article 16, Section 59, the Conservation Amendment) as well as the laws of the State of Texas pertaining thereto; * * * and may avail itself of all of the legal rights and remedies of any description whatsoever conferred upon said levee improvement districts by the laws and Constitution of the State of Texas." This order, reciting the compliance with all statutory requisites, appears in the statement of facts.

Article 3, section 52, of the Constitution, had placed a limit upon the amount of bonds to be issued by levee districts at one-fourth of the assessed value of properties within the district. The first issue of $48,000, together with the second issue of $2,000, aggregating $50,000 above referred to, which were issued prior to adoption of the Conservation Amendment and to the entry of the order creating said district a conservation and reclamation

district under the terms of the Conservation Amendment, were within the constitutional limit theretofore provided, as the record shows that the assessment last approved before the issuance of said bonds amounted to $201,880, and the Attorney General so certified.

The Conservation Amendment to the Constitution removed the limit on the amount of bonds which might be issued by such district, and section 4 of the Canales Act provided that "all limitations of indebtedness authorized to be incurred and taxes to be levied, imposed by Section 52 of Article 3 of the Constitution, and any and all laws under which any district has been or may be organized, are removed as to all districts which may become conservation and reclamation districts under the terms of this Act."

On January 10, 1919, after the district had been brought within the terms of the Conservation Amendment under the provisions of the Canales Act above referred to, an order of the commissioners' court of Dallas county was entered authorizing the issuance of $100,000 of bonds by the district, in pursuance of the provisions of law relative to the issuance thereof, and such bonds were issued of date January 10, 1919, in accordance with the form set out in the statement of facts. These bonds are known as series No. 3.

Thereafter, in August, 1919, an additional $22,000 of bonds were issued by the district in pursuance of the provisions of law, of date August 10, 1919, in accordance with form thereof set out in the statement of facts.

All of the bonds referred to were duly approved by the Attorney General and registered by the comptroller, in accordance with certified copies of the certificates of approval and registration shown in the statement of facts.

Default being made in the payment of these bonds, suits were filed in the district court of Dallas county by Lewis W. Thomson et al. and the Commerce Trust Company of Kansas City, Mo., to recover on these bonds. Under order of court the two suits were consolidated and tried together, and judgment rendered for the plaintiffs for the amount of the bonds and accrued coupons, from which this appeal has been perfected.

The answers of the defendants attacked the validity of the district, the legality of the bonds, and the right of plaintiffs to recover on the ground that the property owners had not received the expected benefits from the creation of the district, and that levees had not been constructed in accordance with the plan of reclamation. Exceptions were presented to these allegations by the plaintiffs in their supplemental pleadings and trial amendments, on the ground that the allegations were insufficient to show the invalidity of the acts under which the district had been created and its bonds issued, or that the district was illegally created, and that the fail-

ure of property owners to receive expected benefits would not affect the validity of the district or of the bonds issued by it. These exceptions were sustained by the court, and its action in doing so is the basis of the assignments of error submitted by counsel for appellants in their brief.

The validity of the Levee District Act of 1915 and the Canales Act of 1918 have each been before the Supreme Court of this state, and each held valid. We need not review at length the several cases, but will only refer to them.

Dallas County Levee Imp. Dist. No. 2 v. Looney, 109 Tex. 326, 207 S. W. 310, referred to in the above preliminary statement, in which the object of the action was to require the Attorney General's approval of certain bonds issued by Dallas county levee improvement district No. 2, under the Canales Act, and in which case Judge Phillips, speaking for the Supreme Court, discussed the two acts and held them to be valid, and granted the petition for mandamus requiring the approval by the Attorney General of the bonds. State v. Bank of Mineral Wells (Tex. Civ. App.) 251 S. W. 1107; Dallas County Levee Imp. Dist. No. 3 v. Ayers (Tex. Civ. App.) 246 S. W. 1112; Rutledge v. State (Tex. Sup.) 7 S.W.(2d) 1071; Rutledge v. State (Tex. Com. App.) 292 S. W. 165; Prudential Ins. Co. v. Dallas County Levee Imp. Dist. No. 3 (Tex. Civ. App.) 296 S. W. 974.; Hargrave v. State (Tex. Civ. App.) 10 S.W.(2d) 765.

That the provisions of the Levee District Act of 1915, authorizing the creation of levee districts by commissioners' courts, do not constitute an unlawful delegation of legislative power to such courts, was passed upon by this court in Prudential Ins. Co. v. Dallas County Levee Imp. Dist. No. 3, supra, by this court (a writ of error refused), in which case Judge Higgins said: "In the absence of a State Constitutional restriction it is competent for a Legislature to create such district directly, or as was provided by the Laney Act, by a proceeding before the Commissioners' Court in which the parties interested are cited to appear and present their objections. It is for the State to determine the method which it will pursue in creating such districts. Houck v. Little River Drainage Dist. 239 U. S. 254, 36 S. Ct. 58, 60 L. Ed. 266."

A similar question was involved in the case of Trimmier v. Carlton (Tex. Sup.) 296 S. W. 1070. In that case Judge Cureton, for the Supreme Court, wrote a very elaborate opinion. On page 1079 (13) the opinion refers to a number of instances in which the Legislature might exercise certain powers, and sometimes does exercise, which may be delegated, and refers to many cases so holding. The conclusion reached in that case is stated thus: "In view of the history of the creation of municipal corporations, and the application of the principle of local self-government, which that history so well illustrates, the apparently

all-inclusive language of the Constitution prohibiting the exercise of legislative power except by the Legislature must be interpreted in the light of the common law, and that it therefore does not include any prohibition against the delegation of power of administrative agencies, and of the people to organize public corporations for the administration of local affairs and bring about local improvements, in the manner provided by our statutes under review. We are convinced this is the sound basis of the rule invariably followed, regardless of the contrariety of reasons given."

■ Our courts have uniformly held that the creation of levee districts under the provisions of the Levee District Act of 1915, and of the Canales Act of 1918, constitutes "county business" within the meaning of the Constitution of this state, and was within the legislative power to provide for the creation of such districts by such commissioners' courts. Glenn v. Dallas County Bois d'Arc Island Levee Imp. Dist. (Tex. Civ. App.) 275 S. W. 138, and on second hearing (Tex. Civ. App.) 282 S. W. 339; Wharton County Drainage Dist. v. Higbee (Tex. Civ. App.) 149 S. W. 381; Preston v. Anderson County Levee Imp. Dist. No. 2 (Tex. Civ. App.) 3 S.W.(2d) 891.

In that case the levee was organized under the authority and proceedings of the commissioners' court for the purpose of reclamation and drainage of certain lands. In discussing the issues presented Judge Levy said: "Neither is the Act opposed to Section 18 of Article 5 of the Constitution upon the ground that it imposes duties upon the Commissioners' Court not constituting 'County business' in the meaning of that term. The levee district is created as a public utility," etc. In that case a writ of error was refused.

In the Wharton County Drainage Dist. No. 1 v. Higbee, it was submitted that under the provisions of section 18, art. 5 of our Constitution, defining the powers of commissioners' courts, such courts could not lawfully discharge the duties imposed upon it by the terms of the drainage act. In the opinion Judge Reese distinguishes the drainage case from the Sun Vapor Electric Light Co. v. Keenan, 88 Tex. 201, 30 S. W. 868, and Brown v. Wheelock, 75 Tex. 385, 12 S. W. 111, 841, referred to in the Light Co. v. Keenan Case, and says: "In such case [the drainage case then being considered], it seems clear that no one would be heard to say that the business of such drainage district was not county business, within the meaning of the provisions of the Constitution as to the powers of the Commissioners' Court. * * * We think that the duties imposed by the Legislature upon the Commissioners' Courts by the drainage Act may fairly be classed as county business, and the objection to the act referred to is not sound." A writ of error was refused.

■ We think it clear that levee districts created under the Levee District Act of 1915 and the Canales Act of 1918, each being a political subdivision of the state and a public corporate entity, bonds issued by them for the purpose of constructing public improvements within the contemplation of the act cannot thereafter be held invalid on the ground that the improvements were not in fact constructed, or that the property owners of the property within the district did not receive the benefits anticipated therefrom. In State v. Bank of Mineral Wells (Tex. Civ. App.) 251 S. W. 1107, and Goldman v. State (Tex. Civ. App.) 263 S. W. 1097, a writ of error denied in each case, exceptions were sustained to allegations, to the effect that the levees had never been completed, and that no benefits had been received by defendant's lands, and that the partially completed improvements were a positive detriment rather than a benefit. Other cases both state and federal are to the same effect. Without quoting from the cases, we refer to some we have examined: Armstead v. Hopkins County Levee Imp. Dist. No. 3 (Tex. Civ. App.) 9 S. W.(2d) 396, by the Texarkana court; City of Austin v. Nalle, 102 Tex. 536, 120 S. W. 996; Dallas County Levee Imp. Dist. v. Ayers (Tex. Civ. App.) 246 S. W. 1112; Salmon v. Board of Directors of Long Prairie Levee Dist., 100 Ark. 336, 140 S. W. 585, holding that there was no merit in the contention that the lands cannot be taxed because the levee was not properly constructed, or that it had caved away; City of Cairo v. Zane, 149 U. S. 122, 13 S. Ct. 803, 37 L. Ed. 673; City of Huron v. Second Ward Savings Bank (C. C. A.) 86 F. 277, 49 L. R. A. 534.

As suggested by appellee, there are two methods of providing payment for public improvements. Under one method warrants are issued payable to the contractor upon the completion of the improvement, and in such cases the completion is a condition precedent to the payment of the warrants. Under the Levee Act the district votes the bonds and sells them at the beginning, receiving the money therefor. The contractor is then paid in cash, and the taxes are levied to pay the bonds. The bondholder's part has been performed when he pays the money. He is not charged with the duty of supervising the expenditure of the funds. All he has undertaken to do is to pay the money, and that he has performed. If the proposition for which the bonds are issued are not practical, or the money squandered, or proves insufficient, or the levee is improperly built, or does not hold water, it is a misfortune, but one which, under the law, must fall upon the property owner. It was his undertaking. The question of benefit received or loss sustained in levee districts under either act is a matter to be determined by the voters of the district at the election held for the purpose of authorizing the creating of the indebtedness for the is-

suance of the bonds, and by the commissioners' court as the governing body of the district.

This suit is brought by the holders of the bonds against the levee district, a municipal corporation of the state to recover on bonds duly issued by the corporation for public improvements. In such suits neither the levee district nor individual property owners can defeat recovery on the ground of an excessive bond issued, as the Conservation Amendment to the constitution places no limit on the amount of which may be issued, but declares that all limitations of indebtedness and taxes imposed by section 52 of article 3, or any law, are removed, and that they may incur indebtedness to fully carry out their purposes and levy taxes for its payment. The only limitation provided by law is that the issue of the bonds must be approved by the duly qualified taxpaying voters residing in the district. Such attack at this time constitutes a collateral attack upon the orders of the commissioners' court creating the district and authorizing the issuance of the bonds. The propositions stated above have been before our courts in the cases above cited: Dallas County Levee Imp. Dist. No. 2 v. Looney, 109 Tex. 326, 207 S. W. 310; Dallas County Levee Imp. Dist. No. 3 v. Ayres (Tex. Civ. App.) 246 S. W. 164; Polk v. Roebuck (Tex. Civ. App.) 184 S. W. 513; Callaghan, County Judge, v. Salliway, 5 Tex. Civ. App. 239, 23 S. W. 838; School Trustees, Dist. No. 25, Harris County, v. Farmer, County Treasurer, 23 Tex. Civ. App. 39, 56 S. W. 555.

The Beaumont court, in the Polk-Roebuck Case, supra, after citing many cases, to which we refer without comment, correctly reached the conclusion, we think, that, where the commissioners' court has jurisdiction, its orders are conclusive unless appealed from, and are not subject to collateral attack unless an abuse of its discretion is manifest.

We have not discussed all the points severally, but we have reviewed each of them, and they are overruled.

Finding no reversible error, the case is affirmed.