HARRIS COUNTY FLOOD CONTROL DISTRICT V.
GERALD C. MANN, Attorney General.

No. 7714. Decided June 12, 1940.
Rehearing overruled September 25, 1940.
(140 S. W., 2d Series, 1098.)

240

E. A. Knipp, R. R. Lewis, George D. Neal, Dan W. Jackson,

*W. L. Cook, Sewall Myer* and *Spurgeon Bell,* all of Houston, for relator.

The Legislature having determined that the facts warranted a finding that the recurring floods in Harris County constituted a public calamity, and a menace to the lives and property of the citizens of the county, such finding is conclusive and binding upon the courts, and a donation of one-half of the State ad valorem taxes levied for a ten-year period in Harris County to the Harris County Flood Control District for the purpose of flood control is valid and constitutional. Dallas County Levee Dist. v. Looney, 109 Texas 326, 207 S. W. 310; Texas & Pac. Ry. Co. v. Ward Co. Irr. Dist., 112 Texas 593, 251 S. W. 212.

The act involved in this controversy is not a local or special law. Baugham v. Willacy Co. Imp. Dist., 112 S. W. (2d) 318; Clark v. Finley, 93 Texas 171, 54 S. W. 343; Reed v. Logan, 94 Texas 177, 59 S. W. 255.

County officers being also State officers may be required to discharge such additional duties imposed upon them by the Legislature as are necessary for the functioning of a flood control district, the limits of which are coextensive with those of the county. Glenn v. Dallas County Bois D'Arc Island Levee Dist., 275 S. W. 137; Trimmier v. Carlton, 116 Texas 572, 296 S. W. 1070; Morton v. Thomson, 15 S. W. (2d) 1067.

*Gerald C. Mann,* Attorney General, *Glenn R. Lewis* and *R. W. Fairchild,* Assistants Attorney General, for respondent.

The act in controversy, granting to the county of Harris one-half of the State ad valorem taxes for a period of ten years is in violation of the Constitution in that it attempts to make an appropriation for a longer period than two years. Houston & T. C. Ry. Co. v. Dallas, 98 Texas 396, 84 S. W. 648; State v. Smith, 47 S. W. (2d) 642.

It is an attempt to grant public money to the United States and its agencies. Texas Pharmaceutical Assn. v. Dooley, 90 S. W. (2d) 328. It attempts to control upon the governing body of Harris County Flood Control District the authority to determine for what purposes the money shall be used. Terrell v. Middleton, 108 Texas 14, 191 S. W. 1138.

The Act authorizes the commissioners court of said county to issue bonds without a vote of the people, and secured only by a pledge of the taxes granted by the State, and to supplement said funds from the general revenue, if necessary. Lower Colorado River Authority v. McCraw, 125 Texas 268, 83 S. W. (2d) 629; State v. Swisher, 17 Texas 441.

The commissioners court has no authority to superintend or govern the expenditure of State funds, as it is not county business.

Reed v. Rogan, 94 Texas 117, 59 S. W. 255; Sun Vapor Elec. Co. v. Keenan, 88 Texas 197, 30 S. W. 868.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This is a mandamus proceeding, instituted directly in the Supreme Court by Harris County Flood Control District against Honorable Gerald C. Mann, Attorney General of Texas, to compel him to approve two issues of bonds proposed to be issued by the District. One issue is for $500,000.00, the other for $3,000,000.00. The validity of the issue for $500,000.00 depends, in the main, on the constitutionality of the Act of the Legislature of this State creating the District, being H. B. 1131, Chapter 360, page 714, Acts Regular Session 45th Legislature, 1937. The validity of the issue for $3,000,000.00 depends on the constitutionality of an Act of the Legislature of this State, being S. B. No. 6, Acts Regular Session 46th Legislature, 1939, as well as the validity of the Act of 1937 just mentioned. The Act of 1939 is Chapter 8, Special Laws 46th Legislature, 1939, page 976. We shall hereafter refer to the two Acts as the Act of 1937 and the Act of 1939, respectively.

The Act of 1937 creates this District as a conservation and reclamation district, with its boundaries and area identical with the boundaries and area of Harris County, Texas. It is provided that the District shall be a governmental agency and body politic and corporate, with the powers of government, and with the authority to exercise the rights, privileges, and functions specified in the Act. The Act declares that the creation and establishment of the District is "essential to the accomplishment of the purposes of Section 59 of Article XVI of the Constitution of the State of Texas, as amended, including the control, storing, preservation, and distribution of the storm and flood waters, and the waters of the rivers and streams in Harris County and their tributaries, for domestic, municipal, flood control, irrigation, and other useful purposes, the reclamation and drainage of the overflow land of Harris County, the conservation of forests, and to aid in the protection of navigation on the navigable waters by regulating the flood and storm waters that flow into said navigable streams."

The Act of 1937 creating this District makes the Commissioners' Court of Harris County the governing body of such District. In this regard, the Act makes such Commission-

ers' Court the governing agency of such District, with power conferred and duties imposed to conduct all of its governmental, political, and corporate powers. The 1937 Act creating the District authorizes it to issue bonds, to be paid out of ad valorem taxes to be levied upon real and personal property situated therein. Such bonds must be authorized by vote of the qualified property tax-paying voters of the District. In this connection, it appears that the $500,000.00 bond issue here involved has been duly authorized by proper vote of the District, and there is no impediment to its approval, if the Act of 1937 creating the District is constitutional.

As already indicated, after this District was created by the 45th Legislature, 1937, the 46th Legislature, 1939, enacted Senate Bill No. 6, above mentioned. By the terms of such 1939 Act, for a period of ten years, commencing September 1, 1940, there is donated and granted by the State to Harris County Flood Control District, supra, one-half of the State ad valorem taxes collected in Harris County for general revenue purposes. It is provided that such taxes so donated shall be used by the District for the purpose of preventing the continuing public calamity caused by great floods and to construct improvements to control flood waters in Harris County for the protection of life, property, soil, forests, public highways, and the Houston Ship Channel lying within said county, and to carry out the powers given in such Act and given in the Act of 1937 creating the District.

The 1939 Act states, in Section 2 thereof, that:

"The County of Harris, Texas, acting by and through its Commissioners' Court, shall have authority, and it is hereby authorized, to issue its negotiable bonds secured by a pledge of the tax moneys donated and granted by the State of Texas, as hereinabove provided, and the proceeds of the sale of such bonds may be used for purchasing lands, easements, rights-of-way, structures, and for the construction of improvements, including dams, reservoirs, and all other works suitable for use in connection with the flood control program and projects in said County and the maintenance and operation thereof, and doing all things necessary to the execution of the purposes for which the grant and donation is made; provided, however, that the aggregate amount of bonds to be issued shall not exceed such sum that the donation and grant of one-half of the State ad valorem taxes for a period of ten (10) years will service so as to pay interest and to create a sinking fund sufficient to pay said bonds at maturity."

The Act then provides that all bonds issued under its provisions shall be issued in the name of the District.

■ It will be seen from the above that, under the Act of 1939, the tax donation is to the District; not to the county. The Act of 1939 authorizes the County of Harris to issue its bonds, to be secured by the taxes donated—not to Harris County, but to the District. The part of the Act of 1939 prescribing the form of the bonds to be issued states that they shall be issued in the name of the District; not Harris County. Looking at the entire Act, we construe it as authorizing the issuance of the bonds of the District; not Harris County. We think this is plainly the intent of the Act, taken as a whole, when it is considered that the funds provided to pay such bonds belong to the District, and the bonds are to be issued in the name of the District. Simply stated, the provision of Section 2 of the Act, which states that "the County of Harris * * shall have authority * *· to issue its negotiable bonds secured by a pledge of the tax moneys donated and granted by the State of Texas, * *" means that Harris County Flood Control District may issue such bonds, acting, as provided by said Act, by and through the Commissioners' Court of Harris County. The bonds and bond record show that these bonds are issued as the bonds of this District.

As authorizing the donation of the State tax moneys above mentioned, the 1939 Act contains, at its very beginning, the following provision:

"Section 1. STATE TAX DONATION: The Legislature finds and declares that the recent and recurring floods in Buffalo Bayou and other streams and tributaries in Harris County, with the consequent loss of many lives and of property to the extent of millions of dollars and the continued threat to commerce on, and the use, of the Harris County Houston Ship Channel and the Port of Houston, constitute a public calamity to the State of Texas and to the people and property within said County."

We will make such further statements of the provisions of the two Acts here involved as may be necessary to decide the questions of law here presented.

The issue of bonds for $3,000,000.00, here involved, is secured by the donated taxes provided by the 1939 Act.

■ From all the provisions of the 1937 Act, creating this District and defining its nature, purposes, and powers, we

think it is too plain to admit of debate that such Act constitutes the District an arm of the State government,—that it, a State governmental agency. We further think that it is too plain to admit of debate that such Act contemplates, or intends, that this District shall exist and function as a governmental agency and a body politic and corporate, separate, independent, and distinct within itself. It is true that its boundaries and area are identical with the boundaries and area of Harris County, but we do not regard that as any reason to hold that this District is a corporate or political entity in anywise connected with, or dependent on, the corporate or political entity of Harris County. It was within the power of the Legislature to create this District as a conservation and reclamation District and define its area and boundaries, and the fact that the Legislature saw fit to define such area and boundaries the same as Harris County in no way indicates that the Legislature did not intend the District to be a separate and distinct corporate and political entity. Subdivision (b) of Section 59 of Article XVI, Texas Constitution. We here quote the constitutional provision just cited:

"(b) There may be created within the State of Texas, or the State may be divided into, such number of conservation and reclamation districts as may be determined to be essential to the accomplishment of the purposes of this amendment to the constitution, which districts shall be governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law."

We shall now take up and decide the objections to these bonds contained in the answer of the Attorney General. In doing so we will follow the order of said ˉobjections as contained in such answer.

■ By his first proposition the Attorney General contends that that part of the Act of 1939 which grants, for a period of ten years, to this District one-half of the State ad valorem taxes collected for general revenue purposes in Harris County, is a violation of Section 51 of Article III, Section 6 of Article VIII, and Section 49 of Article III, of our State Constitution.

Section 51 of Article III of our State Constitution prohibits the Legislature from granting any public money to any individual, association of individuals, municipal or other corporation whatsoever, with certain exceptions. One of these excep-

tions is that the above-mentioned prohibition shall not be construed so as "to prevent the grant of aid in cases of public calamity."

Section 6 of Article VIII is as follows:

"Sec. 6. No money shall be drawn from the Treasury but in pursuance of specific appropriations made by law; nor shall any appropriation of money be made for a longer term than two years, except by the first Legislature to assemble under this Constitution, which may make the necessary appropriations to carry on the government until the assemblage of the sixteenth Legislature."

Section 49 of Article III is as follows:

"Sec. 49. No debt shall be created by or on behalf of the State, except to supply casual deficiencies of revenue, repel invasion, suppress insurrection, defend the State in war, or pay existing debt; and the debt created to supply deficiencies in the revenue, shall never exceed in the aggregate at any one time two hundred thousand dollars."

If the donation of State taxes provided by the Act of 1939 is authorized by Section 51 of Article III of our State Constitution, then it is too plain to admit of debate that such donation cannot violate either Section 6 of Article III or Section 49 of Article III, supra. Brazos River Con. & Rec. Dist. v. McCraw, 126 Texas 506, 91 S. W. (2d) 665; Aransas Pass v. Keeling, 112 Texas 339, 247 S. W. 818. We therefore come to decide if this donation violates Section 51 of Article III of our Constitution.

As already shown, Section 51 of Article III of our State Constitution prohibits the Legislature from granting any public money to any municipal or other corporation whatsoever, with certain exceptions. One of these exceptions is that such constitutional prohibition shall not be construed so as "to prevent the grant of aid in cases of public calamity." In the Brazos River, etc., case, supra, it was expressly held that a donation of general fund State taxes could be made for more than two years,—in fact, for 20 years,—to a district such as this, where the grant was authorized under Section 51 of Article III, supra, as "aid in cases of public calamity." It follows that this grant cannot be condemned as unauthorized under Section 51 of Article III, supra, unless it can be said, as a matter of law, that the legislative finding of "public calamity" contained in this Act is without any substantial basis on which to rest.

■ The 1939 Act finds that "the recent and recurring floods on Buffalo Bayou and other streams and tributaries in Harris County, with the consequent loss of many lives and of property to the extent of millions of dollars and the continued threat to commerce on, and the use of Harris County-Houston Ship Channel and the port of Houston, constitute a public calamity of the State of Texas and to the people and property within said county."

In the Brazos River, etc., case, supra, as shown by the opinion of the late Chief Justice Cureton, the public calamity found by the Legislature as authority for a grant of twenty years of State general revenue taxes to the conservation and reclamation district there involved was "recurrent, devastating floods in the valley of the Brazos River, which have, over a long period of years, caused a deplorable loss of life and property, and the erosion of the soil and the depletion of the fertility of the lands in said valley and the water-shed served by the Brazos River in Texas, and the public highways and structures the lands belonging to the State situated within said water-shed; all of which is hereby declared to be a public calamity, * * *"

It will be noted that the public calamity named in the Brazos River Act was, in legal effect, damage, and loss of life and property, natural and man-made, caused by recurrent, devastating floods in the valley of the Brazos River and its tributaries. It will also be noted that the public calamity recited in the 1939 Act here involved is, in legal effect, loss of many lives and millions of dollars worth of property, and the continued threat of the loss of lives and property, natural and man-made, caused by the recurrent floods in Buffalo Bayou and other streams and tributaries in Harris County.

To our minds, it is too plain to admit of debate that the kind and character of "public calamity" upheld in the Brazos River Act is, in law, the same kind and character of public calamity found to exist in the 1939 Act here involved. This Court held the grant or donation constitutional in the Brazos River Act. It ought, therefore, to follow that it is constitutional in this Act.

The parties to this proceeding have agreed to what the facts are with reference to the floods which have occurred in the past in Harris County, and the consequent devastation and loss of property and lives. We will not extend this opinion by attempting to set out such facts. It is sufficient to say that the "public calamity" shown thereby differs from the "public

calamity" existing in the Brazos River Act only in degree or amount. If a public calamity within the meaning of Section 51 of Article III existed with reference to the Brazos River Act, it cannot be said, as a matter of law, that it does not exist with reference to this Act.

■ By his second proposition the Attorney General contends that both the 1937 and the 1939 Acts here involved violate Sections 51 and 52 of Article III of our State Constitution. It appears that Section 2 of the Act of 1937 authorizes this District "to contribute to the United States of America, or any of its agencies in connection with any project undertaken by it, affecting or relating to flood control in Harris County." The Act of 1939 provides, in effect, that the taxes donated to this District "shall be used by the said Harris County Flood Control District to carry out the powers given herein and in Chapter 360, Acts of the Regular Session of the 35th Legislature, 1937, creating said District." We think the two Acts, when taken as a whole, merely authorize the District to co-operate with the Federal Government in carrying out the purposes of the District. We overrule the second proposition, supra.

By his third proposition the Attorney General contends that the Act of 1939 violates Sections 49 and 51 of Article III and Section 6 of Article VIII of our State Constitution, in that it attempts to appropriate the moneys therein sought to be granted for a period of ten years to the Harris County Flood Control District, to be used for purposes which have no reasonable or substantial relationship to the affording of aid for the relief or prevention of a public calamity. We think we have disposed of these objections in our discussion of the first and second propositions contained in the Attorney General's answer. Also, we think Judge Cureton's opinion in the Brazos River, etc., case, supra, decides all questions involved in this proposition adversely to the contentions of the Attorney General.

■ By his fourth proposition the Attorney General contends that the Act of 1939 violates Section 1 of Article II and Section 6 of Article VIII of our State Constitution, in that it attempts to confer upon the governing body of Harris County Flood Control District legislative authority to determine or choose the purposes to which the granted money may be applied, and the amount to be devoted to each purpose. We think that all of the purposes named in the two Acts come within what is known as the Conservation Provisions of our State Constitution, Section 59, Article XVI.

The Act of 1937 here involved contains the following provision:

"Should the necessity arise, the commissioners' court may supplement from its general fund any State taxes hereafter donated and granted, but no tax shall ever be levied or any debt be created against the county for such purpose, without a vote of the people."

The Act of 1939 contains the following provision:

"Should the necessity arise, the commissioners' court may supplement the State taxes herein donated and granted from its general fund."

■ By his fifth proposition the Attorney General contends that both of the above-quoted provisions are void, because in contravention of Section 52 of Article III and Section 59 of Article XVI of our State Constitution.

So far as pertinent here, Section 52 of Article III of our State Constitution prohibits the Legislature from authorizing any county to lend its credit, or to grant public money or thing of value, in aid of any corporation whatsoever. We have already held that this District is a governmental agency and a body politic and corporate, separate and independent from Harris County. It follows that, under the plain terms of Section 52 of Article III, supra, no part of the funds of Harris County can be pledged or used to pay the bonds of this District.

We do not think the statutory provision under consideration involves Section 59 of Article VI of our State Constitution at all.

■ The sixth proposition contained in the Attorney General's answer is as follows:

"If the Harris County Flood Control District is an arm or agency of the state government, a body politic and corporate separate and distinct from Harris County, the provision of the Act creating it imposing upon the Commissioners' Court of Harris County the power and duty of managing the affairs of such state agency is violative of the implied restraint imposed upon the Legislature by the provisions of Article V, Section 18, of the Constitution, which limits the duties which may be imposed upon the County Commissioners' Court to 'county business'; but, in any event, so much of the Act as purports to vest management and control of the District in the Commissioners' Court of Harris County is a special or local law' regulating the affairs of counties' and 'prescribing the powers and duties of county officers,' and therefore violative of Article III, Section 56, of the Constitution."

It will be noted that the above proposition embraces the contention that the Act of 1937 creating this District violates a certain part of Section 56 of Article III of our State Constitution, which we will later indicate, as well as Section 18 of Article V of such document.

The part of Section 56 of Article III of our Constitution which the Attorney General contends is violated by this Act reads as follows:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:

"* * * regulating the affairs of counties * * *

"* * * prescribing the powers and duties of officers in counties * * *"

We are of the opinion that we have disposed of the contention that the 1937 Act violates that part of Section 56 of Article III of our State Constitution above indicated in our holding that this Act creates this District as a State governmental agency, a body politic and corporate, separate, distinct, and independent within itself. Simply stated, the Act of 1937 is fully authorized by Section 59 of Article XVI of our State Constitution, and the Act creating this District should not be classed as a local or special law within the meaning of the constitutional provision under discussion. Lower Colorado River Authority v. McCraw, 125 Texas 286, 83 S. W. (2d) 629; Brazos River Con. & Rec. Dist. v. McCraw, 126 Texas 506, 91 S. W. (2d) 665.

Section 18 of Article V of our State Constitution reads as follows:

"Sec. 18. Each organized county in the State now or hereafter existing, shall be divided from time to time, for the convenience of the people, into precincts, not less than four and not more than eight. The present County Courts shall make the first division. Subsequent divisions shall be made by the Commissioner's Court, provided for by this Constitution. In each such precinct there shall be elected at each biennial election, one justice of the peace and one constable, each of whom shall hold his office for two years and until his successor shall be elected and qualified; provided that in any precinct in which there may be a city of 8000 or more inhabitants, there shall be elected two justices of the peace. Each county shall in like manner be divided into four commissioners' precincts in each of which there shall be elected by the qualified voters thereof one county commissioner, who shall hold his office for two

years and until his successor shall be elected and qualified. The county commissioners so chosen, with the county judge, as presiding officer, shall compose the County Commissioners Court, which shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed."

■ The Attorney General contends that if this Act is given the construction that it creates this District as a separate and independent corporate political entity from Harris County, the attempt to make the Commissioners' Court of such county its governing board or authority violates that part of Section 18 of Article V of our State Constitution which provides that the Commissioners' Court "Shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed." It is evident that such constitutional provision contains no direct or express prohibition against clothing the Commissioners' Court with powers and duties other than "county business." It follows that if such provision prohibits the Legislature from clothing the Commissioners' Courts with powers and duties not classed as "county business," it is by implication only. It would seem that this Court is committed to the interpretation that the constitutional provision under discussion does, by implication, prohibit the Legislature from requiring duties from the Commissioners' Court not "county business." Electric Light Co. v. Keenan, 88 Texas. 197, 30 S. W. 868. A reading of the opinion in the case just cited will disclose that it holds that under the constitutional provision under discussion, a Commissioners' Court cannot be required to perform duties not "county business." The opinion does not hold that the Commissioners' Court cannot act under a law authorizing it to perform functions other than "county business," if it so chooses. That question was expressly not decided in the Keenan case, supra, and we do not decide it here, as it is not necessary to do so.

After a careful review of the authorities, we have reached the conclusion that it is already settled that the implied prohibition contained in Section 18 of Article V of our State Constitution, against requiring Commissioners' Courts to perform duties not classed as "county business," cannot be confined in such a narrow groove as to prohibit the Legislature from committing to commissioners' courts the governing affairs of conservation and reclamation districts, such as this, created by the Legislature under the express authority of Section 59 of

Artivle XVI of our State Constitution,—where the district is located within the county of the commissioners' court authorized and required to govern it. Wharton County Drainage District No. 1 v. Higbee (Texas Civ. App., writ refused), 149 S. W. 381; Morton v. Thomson (Texas Civ. App.), 15 S. W. (2d) 1067; Glenn v. Bois d'Arc Island Levee Dist. (Texas Civ. App.), 275 S. W. 137; id. (Com. App.), 288 S. W. 165.

In the Wharton County Drainage District No. 1 case, supra, it is shown the district was created by authority of Chapter 40, Acts 30th Legislature, 1907, page 78, as amended by Chapter 13, Acts 31st Legislature, 1909, page 23. These two Acts are very complicated and comprehensive. For the purposes of this opinion, we will quote the captions of the two Acts.

The caption of the 1907 Act is as follows:

"An Act to authorize the commissioner courts of the several counties of Texas to create and establish drainage districts, to construct canals, drains and ditches, to make levees, improve streams and water courses and make other improvements for the purpose of drainage; to order and hold elections for the purpose of voting on drainage propositions, and authorizing the issuance of bonds and levy of tax, and to issue bonds in payment for such drainage improvements and the maintenance thereof, and to levy and to collect taxes for the payment of such bonds, to appoint drainage commissioners and all other necessary officers of such drainage districts for the purpose of carrying into effect the provisions of this act; granting the right of eminent domain to such drainage districts, and authorizing the drainage commissioners to acquire by purchase, gift or grant, for such district, title to any right of way and other property, and generally authorizing the county commissioners court and the drainage commissioners to do all things necessary for the establishing and maintenance of such districts according to the provisions of this act; repealing all laws and parts of laws in conflict herewith, and declaring an emergency."

The caption of the 1909 Act reads as follows:

"An Act to amend Sections Nos. 2, 11, 12, 13, 16, 17, 22, 23, 29, 30, 35, 41 and 44 of Chapter XL of the General Laws of the State of Texas, passed at the Regular Session of the Thirtieth Legislature of Texas, entitled 'An Act to authorize the commissioners courts of the several counties of Texas to create and establish drainage districts, to construct canals, drains and ditches, to make levees, improve streams and water

courses and make other improvements for the purpose of drainage; to order and hold elections for the purpose of voting on drainage propositions, and authorizing the issuance of bonds and levy of tax, and to issue bonds in payment for such drainage improvements and the maintenance thereof, and to levy and collect taxes for the payment of such bonds, to appoint drainage commissioners and all other necessary officers of such drainage districts for the purpose of carrying into effect the provisions of this Act: granting the right of eminent domain to such drainage districts, and authorizing the drainage commissioners to acquire by purchase, gift or grant, for such district, title to any right of way and other property, and generally authorizing the county commissioners court and the drainage commissioners to do all things necessary for the establishing and maintenance of such districts according to the provisions of this Act; repealing all laws and parts of laws in conflict herewith, and declaring an emergency'; validating certain proceeding had and bonds heretofore issued and registered, providing for additional elections and issuance of bonds, elections of drainage district commissioners, fixing a tax lien and penalty, repealing all laws in conflict herewith, and declaring an emergency."

■ It would take up too much space in this opinion for us to undertake to analyze all the provisions of the above drainage Acts and detail all of the duties that they impose upon commissioners' courts. We do, however, point out the fact that such Acts devolve the following powers and duties upon commissioners' courts: To create and establish drainage districts; to order and hold elections for the purpose of voting on drainage propositions; to order and hold elections authorizing the issuance of bonds and levy of taxes; to issue bonds in payment for the improvements and maintenance of drainage districts; to levy taxes for the payment of such bonds; to appoint drainage commissioners and all other necessary officers of such drainage districts; and to generally authorize the commissioners' courts and the drainage commissioners to do all things necessary for the establishment and maintenance of such districts according to the provisions of the Act. Certainly, the powers above enumerated come no nearer to constituting county business than the power conferred and duties required by the Acts of 1937 and 1939 under consideration in this case. In the Wharton County Drainage District No. 1 case, supra, the Act was attacked on the ground that it required duties of the commissioners' court not county business, in violation of Section

18 of Article V of our State Constitution. In a very exhaustive opinion the Court upheld the Act, as against the attack above indicated. We quote, with approval, the following from the opinion:

"It is also contended by appellees that the drainage law is unconstitutional under the provisions of section 18, article 5, of the Constitution, with reference to the powers of the commissioners' Court. The particular provision alleged to be violated is as follows, after making provision for the election of commissioners: 'The county commissioners so chosen, with the county judge, as presiding officer, shall compose the commissioners' court, which shall exercise such powers and jurisdiction over all county business as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed.' In Electric Light Co. v. Keenan, 88 Tex. 201, 30 S. W. 868, it was held by our Supreme Court that the commissioners' court could not be required to perform the duties imposed upon it by an act of the Legislature requiring it to take charge of and administer the affairs of the defunct corporation of the city of Seymour, whose charter had been declared void. The ground of the decision was that this was not 'county business' within the meaning of the provisions of the Constitution above quoted. Whether the court could voluntarily exercise such powers is expressly not decided. We confess that it appears to us that, if the commissioners' court could not be required to perform such duties because beyond the powers conferred by the Constitution, for a like reason it could not voluntarily do so, though the court cites the case of Brown v. Wheelock, 75 Tex. 385, 12 S. W. 111, 841, as probably authority for a different holding. We think that there is a clear distinction between a drainage district, as provided for in the act of the Legislature in question, under the express authority of the constitutional amendment with reference thereto and a town or city corporation, with reference to the relation of each to the county business. A drainage district as created under the act in question is a part of the county, in a sense that distinguishes it from a town or city corporation created as a separate entity. Under the provisions of the amendment to the Constitution referred to, the entire county, or any precinct thereof, might be made a drainage district. In such case it seems clear that no one would be heard to say that the business of such drainage district was not county business, within the meaning of the provisions of the Constitution as to the powers of the commissioners' court. When, instead, a district

is formed of a part of the county without regard to the lines of any existing political subdivision of the county, there seems no substantial basis for the argument that the business of the creation of such district and the management of its affairs, in so far as they are committed by this act to the commissioners' court, is not county business. Such districts stand upon the same footing in all essential particulars, so far as this objection is concerned, as irrigation districts, navigation districts, road districts, levee districts, school districts, and even local option districts, whether under the provisions of the liquor laws, or with regard to stock running at large in certain territory, all of which, under the provisions of the particular statutes providing therefor, are created and organized under the direction and supervision of the commissioners' court. The argument is made that as to none of these is the commissioners' court given such powers as with regard to drainage districts. That can make no difference, if the principles announced in the Keenan case have any application. If the business of these various districts is not county business, then under that decision no part of such business can be imposed upon the commissioners' court. It seems clear to us that, if the powers and duties of the commissioners' court with reference to drainage districts cannot be imposed upon said court because not county business, it would be equally powerless to discharge the duties imposed upon it by the various local improvement statutes referred to, with the result of striking down at one blow every act of this kind enacted by the Legislature. It has become the settled policy of the state to confer such powers on commissioners' courts. The executive and legislative departments of the government have construed the constitutional provision referred to as authorizing the exercise of such powers by them, and it would have to be a very clear case that would justify the courts in holding otherwise, to the destruction of this kind of legislation, with all of its disastrous consequences. It was stated arguendo by the Court of Criminal Appeals, in Chapman v. State, 37 Tex. Cr. R. 167, 39 S. W. 113, in answer to an objection of the same kind with regard to the power of the Legislature to impose upon commissioners' courts the duties imposed upon them by the local option liquor laws, that if the power had not been authorized by the Constitution with reference to such laws, and the jurisdiction of commissioners' courts was specifically defined, there was nothing to prevent the Legislature from conferring this additional jurisdiction. We think that the duties imposed by the Legislature upon the commissioners' courts by the drainage act may fairly be classed as

county business, and the objection to the act referred to is not sound."

In Morton v. Thomson, supra, it is shown that a levee district was created under the levee district Act of 1915 (Acts 34th Leg., ch. 146), and what is generally known as the Canales Act of 1918 (Acts 35th Leg., 4 C. S., ch. 25.) These Acts require and empower commissioners' courts to perform services and duties as regards levee districts fully as comprehensive and no more "county business" than were required in the Acts involved in the Wharton County Levee District No. 1 case, supra. In Morton v. Thomson, supra, the Act was attacked on the ground that it empowered and required commissioners' courts to perform duties and functions not "county business" within the meaning of Section 18, Article V, of our State Constitution. The opinion rejects such contention, and holds the Act not in contravention of the constitutional provision mentioned. We quote the following from the opinion:

"Our courts have uniformly held that the creation of levee districts under the provisions of the Levee District Act of 1915, and of the Canales Act of 1918, constitutes 'county business' within the meaning of the Constitution of this state, and was within the legislative power to provide for the creation of such districts by such commissioners' courts. Glenn v. Dallas County Bois d'Arc Island Levee Imp. Dist. (Tex. Civ. App.) 275 S. W. 138, and on second hearing (Tex. Civ. App.) 282 S. W. 339; Wharton County Drainage Dist. v. Higbee (Tex. Civ. App.), 149 S. W. 381; Preston v. Anderson County Levee Imp. Dist. No. 2 (Tex. Civ. App.), 3 S. W. (2d) 891.

"In that case the levee was organized under the authority and proceedings of the commissioners' court for the purpose of reclamation and drainage of certain lands.. In discussing the issues presented Judge Levy said: 'Neither is the Act opposed to Section 18 of Article 5 of the Constitution upon the ground that it imposes duties upon the Commissioners' Court not constituting "County business" in the meaning of that term. The levee district is created as a public utility,' etc. In that case a writ of error was refused.

"In the Wharton County Drainage Dist. No. 1 v. Higbee, it was submitted that under the provisions of section 18, art. 5 of our Constitution, defining the powers of commissioners' courts, such courts could not lawfully discharge the duties imposed upon it by the terms of the drainage act. In the opinion Judge Reese distinguishes the drainage case from the Sun

Vapor Electric Light Co. v. Keenan, 88 Tex. 201, 30 S. W. 868, and Brown v. Wheelock, 75 Tex. 385, 12 S. W. 111, 841, referred to in the Light Co. v. Keenan Case, and says: 'In such case (the drainage case then being considered), it seems clear that no one would be heard to say that the business of such drainage district was not county business, within the meaning of the provisions of the Constitution as to the powers of the Commissioners' Court. * * * We think that the duties imposed by the Legislature upon the Commissioners' Courts by the drainage Act may fairly be classed as county business, and the objection to the act referred to is not sound.' A writ of error was refused."

In Glenn v. Dallas County Bois d'Arc Island Levee District, supra, a levee district was created under Chapter 44, General Laws, 4th Called Session, 35th Legislature, generally called the "Laney Act." That Act clothed commissioners' courts with many duties regarding levee districts very similar to the Acts above discussed, and fully as comprehensive. That Act was attacked on the ground that it clothed the commissioners' court with powers and duties not "county business" within the meaning of Section 18 of Article V of our State Constitution. We will not quote from this opinion. It is sufficient to say that it very correctly holds that the phrase "county business" used in the constitutional provision under discussion, should be given a broad and liberal construction so as to extend powers to any and all business of a county, and any other business of a county connected with or interrelated with any business of the county properly within the jurisdiction of such courts under our Constitution and laws. The Supreme Court granted writ of error in the case under discussion, and referred it to the Commission. The opinion of the Commission is reported at 288 S. W. 165. The Commission opinion reverses the judgment of the Court of Civil Appeals, but it in no way disapproves the holding of that court on the question under discussion. It seems to be argued by the Attorney General that in none of the Acts involved in the cases above discussed are the duties and powers of the commissioners' courts as complete and comprehensive as they are in the Act involved in this case. We freely grant that such is the case, but that can make no difference. The constitutional questions are in principle, the same, and the difference is only of degree.

From what we have said it is evident that we hold that the powers conferred on and the duties required of the Commissioners' Court of Harris County by the two Acts here involved

constitute "county business" within the meaning of Section 18 of Article V of our Constitution.

The seventh proposition contained in the Attorney General's answer is as follows:

"The expenditure of the money granted by Senate Bill No. 6 would be state business, certainly in part; and, to the extent that it should be state business (as distinguished from 'county business') the Commissioners' Court could not be empowered to superintend and govern the same, under Article 5, Section 18, of the State Constitution."

We think we have disposed of the contention contained in the above proposition in our discussion supra of the sixth proposition contained in the Attorney General's answer. We allude to our discussion of Section 18 of Article V under such proposition.

The eighth proposition contained in the Attorney General's answer is as follows:

"If the expenditure of any of the funds provided in Senate Bill 6 is rendered 'county business' by virtue of the nature of the improvements therein provided to be constructed, then to that extent said Senate Bill 6 would be regulatory of county business and would be prescribing the powers and duties of the County Commissioners of Harris County, by giving them additional duties, to wit, superintending the erection of such improvements, and would be violative of Article 3, Section 56 of the State Constitution."

We have already disposed of this contention in the other portions of this opinion.

The ninth proposition contained in the Attorney General's answer is as follows:

"To whatever extent the uses of the money authorized in Senate Bill 6 are for county purposes the same is violative of Article 8, Section 9 of the State Constitution."

Section 9 of Article VIII of our State Constitution reads as follows:

"Sec. 9. The State tax on property, exclusive of the tax necessary to pay the public debt, and of the taxes provided for the benefit of the public free schools, shall never exceed thirty-five cents on the one hundred dollars valuation; and no county, city or town shall levy more than twenty-five cents for city

or county purposes, and not exceeding fifteen cents for roads and bridges, and not exceeding fifteen cents to pay jurors, on the one hundred dollars valuation, except for the payment of debts incurred prior to the adoption of the amendment September 25th, 1883; and for the erection of public buildings, streets, sewers, water works and other permanent improvements, not to exceed twenty-five cents on the one hundred dollars valuation, in any one year, and except as is in this Constitution otherwise provided; and the Legislature may also authorize an additional annual ad valorem tax to be levied and collected for the further maintenance of the public roads; provided, that a majority of the qualified property tax-paying voters of the county voting at an election to be held for that purpose shall vote such tax, not to exceed fifteen cents on the one hundred dollars valuation of the property subject to taxation in such county. And the Legislature may pass local laws for the maintenance of the public roads and highways, without the local notice required for special or local laws."

The bonds here involved are the bonds of the District; not of Harris County. The $500,000.00 bonds issue has been duly authorized by vote of the District. The $3,000,000.00 bond issue is secured alone by the State taxes donated to the District. Such donation and bonds are constitutional. Brazos River Con. & Rec. Dist. v. McCraw, supra.

From what we have said, it is evident that we hold that any part of either the Act of 1937 or the Act of 1939 which attempts to authorize Harris County to use any part of its county funds to secure or pay these bonds, or any part thereof, is void. We hold, however, that both Acts are otherwise valid and constitutional.

Mandamus is awarded, as prayed for by Harris County Flood Control District.

Opinion delivered June 12, 1940.

Rehearing overruled September 25, 1940.

Chief Justice Moore disqualified and not sitting.