

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

March 29, 1949

Hon. Pearce Johnson, Chairman
Committee on State Affairs
House of Representatives
Fifty-first Legislature
Austin, Texas

Opinion No. V-797

Re: Whether amendment of Sec.
1-a of Article VIII of the Con-
stitution is self-executing
and whether the provisions of
H.B. 107 comply with said
section.

Dear Sir:

You have submitted a copy of House Bill 107 and re-
quested a ruling of the Attorney General on two questions, the first
of which reads as follows:

"1. Is the enactment of the proposed law neces-
sary to comply with H.J.R. No. 24 of the 50th Legisla-
ture?"

The pertinent provisions of H.J.R. 24, which was adopt-
ed by vote of the people in the 1948 General Election, are the follow-
ing:

"Section 1. That Section 1-a of Article VIII of the
Constitution be amended so as to be and read as follows:

"'Section 1-a. From and after January 1, 1951,
no State ad valorem tax shall be levied upon any prop-
erty within this State for general revenue purposes.
From and after January 1, 1951, the several counties
of the State are authorized to levy ad valorem taxes up-
on all property within their respective boundaries for
county purposes, . . . not to exceed thirty cents (30¢)
on each One Hundred Dollar ($100) valuation, in addi-
tion to all other ad valorem taxes authorized by the
Constitution of this State, provided the revenue derived
therefrom shall be used for construction and mainte-
nance of Farm to Market Roads or for Flood Control,
except as herein otherwise provided."

The proviso relates to the applicability of the amendment to " 'counties or political subdivisions, or areas of the State from which tax donations have heretofore been granted . . .' "

Section 1 of H.B. 107 embodies the exact language of the first sentence above quoted prohibiting the levy of State ad valorem taxes for general revenue purposes after January 1, 1951. Since this sentence of H.J.R. 24 plainly states a positive constitutional prohibition, no legislative act could abrogate or modify its terms and it must, by its very nature, be self-executing. Cooley, Constitutional Limitations, 8th Ed., Vol. 1, pp. 166-168, 170; Watson v. Aiken, 55 Tex. 536, 542; Hemphill v. Watson, 60 Tex. 679, 681; Mitchell County v. City National Bank, 91 Tex. 361, 43 S.W. 880, 883; and authorities there cited. Section 1 of H.B. 107 is therefore in no wise necessary either to effectuate or to comply with the opening mandate of H.J.R. 24.

Passing to a consideration of the remainder of H.J.R. 24, we may hold it self-executing "if it supplies a sufficient rule by means of which the right given may be enjoyed and protected or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by which these principles may be given the force of law."

This excerpt from Cooley on Constitutional Limitations was quoted by the Supreme Court of Texas in Mitchell County v. City National Bank, 91 Tex. 361, 371, 43 S.W. 880, 883, when the court was determining whether or not the provisions of Section 7 of Article XI of the Texas Constitution were self-executing; i.e., said the court, whether "the source of authority for making the levy and collecting the tax is the Constitution and not the act of the Legislature."

The portion of the Constitution in question in the Mitchell case provided:

"All counties and cities bordering on the coast . . . are hereby authorized, upon a vote of two-thirds of the tax payers therein (to be ascertained as may be provided by law), to levy and collect such tax for construction of seawalls, breakwaters, or sanitary purposes, as may be authorized by law, and may create a debt for such works . . ."

The Court reached the conclusion that the provisions of Section 7 of Article XI were not self-executing in the following analysis:

"The only parts of the constitution which bear upon this subject are section 9 of article 8, and sections 2 and 7 of article 11. Section 9 confers no authority upon any officer of a city or county to levy a tax for any purpose, but by the language, 'No county, city or town shall levy more than one-half of said state tax. . . and for the erection of public buildings not to exceed fifty cents on the one hundred dollars in any one year,' places a prohibition or limitation upon the power of the legislature to authorize counties to impose taxes for such purposes. Section 2 of article 11 expressly requires the enactment of a general law to carry its mandates into effect; and section 7 of the same article contains no grant of authority to levy a tax nor designation of any official by whom the tax specified is to be levied and collected, but is, in effect, a limitation upon the power of the legislature to authorize such corporations to create debts. In the sense that all laws in conflict with these prohibitions are void, section 9 of article 8 and section 7 of article 11 are self-executing; but, in so far as anything is required to be done to carry them into effect, they are not so, because they prescribe no rules by which any act could be done in the enforcement of their requirements."

Although the provisions of section 7 of Article XI expressly required future action by the Legislature (the vote of the taxpayer, and the amount of the tax, were to be ascertained "as may be provided by law"), we think that the language of the court above quoted precludes our holding that the last part of H.J.R. 24 is self-executing. There is no "designation of any official by whom the tax specified is to be levied and collected"; nor is "anything . . . required to be done to carry . . . (it) into effect . . . because . . . no rules . . . (are prescribed by) which any act could be done in the enforcement of their requirements." The Mitchell case at least casts enough doubt on the matter to fully justify the enactment of enabling legislation.

Even if the main provisions of H.J.R. 24 are self-executing, legislation could still be deemed desirable for the purpose of "providing convenient remedies for the protection of the right secured, or of regulating the claim of the right so that its exact limits may be known and understood; but all such legislation must be subordinate to the Constitutional provision, and in furtherance of its purposes, and must not in any particular attempt to narrow or embarrass it." Cooley, Constitutional Limitations, 8th Ed., Vol. 1, pp. 170, 171. The power of the Legislature to implement the present amendment is indisputable because, should it be regarded

as self-executing, the machinery for its enforcement could only be found in existing legislation which is, of course, in the main, subject to repeal or amendment at the pleasure of the presently constituted legislative body.

Question No. 2 reads as follows:

"If your answer to question number one is 'yes,' does the Bill properly comply with H.J.R. No. 24?"

The Constitutional Amendment in question (H.J.R. 24) says that the tax funds raised "shall be used for (1) construction and maintenance of Farm to Market Roads or (2) for Flood Control . . ." (Numbers in parenthesis added, and emphasis added throughout this opinion.)

Sections 2-5 of H.B. 107 continue to embody the language of H.J.R. 24 with a notable departure in providing that the tax revenues "shall be used as provided in this Act for the construction and maintenance of Farm-to-Market and lateral roads and for soil and water conservation and flood control. . ." The amount of revenue which may, at the option of the county, be credited to a municipal corporation within its limits and used for "water conservation and flood control purposes" is limited to 1/3 of the tax authorized.

Sections 6-8 provide for a Farm-to-Market and Lateral Road Fund and for a separate Soil and Water Conservation Fund to which the County may credit such portion of the revenues as it sees fit. Both funds are to be under the jurisdiction of the Commissioners Court of the County. But the Farm-to-Market and Lateral Road Fund is to be used solely in cooperation with the State Highway Department, and the "Soil and Water Conservation and Flood Control Fund" ("Flood Control" being added to the name of this fund for the first time in Section 8) is to be used "solely for Soil and Water Conservation and Flood Control purposes, supplementary to and in connection with, plans and programs of the Federal Soil Conservation Service and State Soil Conservation Districts, and the State Extension Service, provided that that part of the County programs for Soil Conservation on farms and ranches shall be handled according to plans and with the personnel of the local conservation district, where one exists in whole or in part within such county." Section 8 further provides:

"To this end, the Commissioners Court may, in its discretion, engage the services of a Federal or State Soil Conservation engineer, or of extention service personnel, in devising and planning for farm and ranch owners and operators, soil, water, erosion, drainage, and eradication program coming within the purview of this

> Act, and may acquire whatever machinery, equipment and material useful and necessary in carrying out such soil, water, erosion, drainage and eradication conservation program, provided such machinery and equipment shall be made available to farm and ranch owners and operators on an out-of-pocket expense basis, not including depreciation."

From this summary it is first apparent that House Bill 107 fully complies with the provision of the Constitutional Amendment only if the term "Flood Control" (one of the two purposes to which expenditures are confined by the amendment) embraces "Soil Conservation." We have been unable to find any authorities directly in point; but we have examined provisions of existing sections of our Constitution and statutes which relate to controlling or conserving natural resources, with which provisions the framers of the amendment must be deemed to have been familiar. Any discussion or even a summary of these provisions would extend this opinion to voluminous proportions. Suffice it to say that the powers of counties and districts in these matters are distinctly specified and enumerated under Article III, Section 52, but that the variety and purposes for which districts are created under statutes passed in pursuance to Section 59 of Article XVI are as varied as the aspects of conservation of natural resources are numerous. Nevertheless, the districts which have been organized are generally limited to the accomplishment of one particular aspect or field of conservation even though their work may incidentally aid or embrace other fields. For example, there are Drainage Districts, Flood Control Districts, Reclamation Districts, Levee Improvement Districts and Soil Conservation Districts. Soil Conservation Districts may be created under the provisions of Article 165a-4, V.C.S., which expressly states that it is carrying out the mandate of Article XVI, Section 59. Laws providing for the creation of Soil Conservation Districts could not have been enacted under the provisions of Article III, Section 52, as none of the three subdivisions thereof are comprehensive enough to embrace the various methods of soil conservation; yet a Flood Control District is plainly authorized by its provisions. We are aware that many aspects of soil conservation do result in controlling floods; but many other methods of soil conservation have no bearing upon flood control. Moreover, we are of the opinion that H.J.R. 24 could easily have enumerated soil conservation purposes as one of the uses to which the tax revenues could be applied had use for such purposes been contemplated. It not only failed to do so, it specifically requires that the revenues shall be used for two purposes (farm to market roads or flood control) "except as herein otherwise provided." You are therefore advised that H.B. 107 has exceeded the constitutional limitations in attempting to divert these revenues to "Soil Conservation" purposes by requiring that some of the revenues "be used supplementary to and in connection with . . . State Soil Conservation Districts."

We do not wish to be understood as saying that none of the funds can be expended on soil conservation. But funds may be expended for soil conservation purposes only if the particular purpose has a direct relationship to flood control. In other words, an integral part of flood control under certain circumstances may be soil conservation. But "soil conservation" standing alone may have nothing to do with flood control. If so, expenditures for such purposes would be unconstitutional. The same is true of "water conservation." Ordinarily water conservation expenditures must be incident to and a part of the "flood control."

Turning to the disposition of the revenues which are to be used for "water conservation and flood control" purposes, the act contemplates the transfer of such revenues to "municipal corporations within the county" (Section 5), specifically providing in Section 6 for "crediting to the municipal corporations whatever funds as may be decided upon by the county . . ." These provisions are in violation of Article III, Section 52 of the Constitution. The new Constitutional amendment authorizes only counties to levy the prescribed taxes on property within their boundaries for county purposes. The taxes which are to be collected are therefore county taxes; the revenues are therefore county funds; and Section 52 of Article III "prohibits the Legislature from authorizing any county to lend its credit, or to grant public money or thing of value, in aid of any corporation whatsoever." Harris County Flood Control Dist. v. Mann, 140 S.W.2d 1098, 1104.

We find no fault with Sections 9, 10, 11 and 12 of the Bill except such portion of Section 12 as requires the revenues to be used for purposes which we have hereinabove held unconstitutional.

Section 13 provides for the issuance of bonds by the county. In so far as it purports to authorize the issuance of bonds and the use of the proceeds of their sale for purposes which we have here held without the provisions of the Constitutional amendment, it is unconstitutional. In this connection, although we have no desire to attempt an improper invasion of fields of policy, we would like to call to your attention the fact that the provisions relating to authorization, issuance, sale, etc., are rather vague. Moreover, it is not entirely clear whether the Act authorizes more than one issue.

Section 14 provides that "Any city or town within such county may likewise issue bonds," etc. We have already pointed out that H.J.R. 24 relates only to counties and authorizes a tax levy for county purposes only. We held that Article III, Section 52 precluded the donation to and control of these funds by municipal corporations. It necessarily follows that H.J.R. 24 neither contemplates nor authorizes legislation enabling cities to issue bonds for any purpose.

The caption of H.B. 107 will, of course, have to be amended to conform to the changes suggested herein.

## SUMMARY

No legislation is necessary to effectuate that portion of the recently adopted Section 1-a of Article VIII of the Texas Constitution (H.J.R. 24), which provides that from and after January 1, 1951, no State ad valorem tax shall be levied upon any property within this State for general revenue purposes. The remaining portions of H.J.R. 24 are not self-executing. Mitchell County v. City National Bank, 91 Tex. 361, 43 S.W. 880, 883. H.J.R. 24 specifies that the tax money shall be used for farm to market roads or flood control. H.B. 107 has exceeded the limitations of H.J.R. 24 in providing that some of the tax revenues shall be used for "Soil Conservation" and for "Water Conservation." Such purposes, as evidenced by the detailed provisions of the Bill, are not embraced within either of the two purposes to which H.J.R. 24 limits the use of said revenues unless the soil conservation or water conservation is an integral part of flood control.

The provisions of H.B. 107 which authorize the transfer of some of these county tax revenues to municipal corporations within the county are violative of the provisions of Article III, Section 52 of the Texas Constitution. Harris County Flood Control Dist. v. Mann, 140 S.W.2d 1098, 1104. Sections 9-13, inclusive, of H.B. 107 comply with the provisions of H.J.R. 24 except for those portions which relate to the use of the tax revenues or the issuance of bonds for "Soil Conservation" and "Water Conservation" purposes. Section 14, authorizing the issuance of bonds by cities, was neither contemplated nor authorized by H.J.R. 24.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/ Marietta McGregor Creel
Mrs. Marietta McGregor Creel
Assistant

MMC/mwb

APPROVED

s/ PRICE DANIEL

ATTORNEY GENERAL