ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

February 11, 2008

The Honorable Keri Roberts
Mills County Attorney
Post Office Box 160
Goldthwaite, Texas 76844

Opinion No. GA-0601

Re: Whether Mills County may fund the Fox Crossing Water District (RQ-0615-GA)

Dear Ms. Roberts:

You generally ask whether Mills County, Texas (the "County") is authorized to fund the Fox Crossing Water District (the "District"), a water conservation and reclamation district.[1] The County "is located within the boundaries of the District." Request Letter, *supra* note 1, at 2. The District, as legislatively authorized, "consists of the territory contained within the boundaries of Lampasas, San Saba, and Mills counties." Act of May 26, 1985, 69th Leg., R.S., ch. 779, § 4, 1985 Tex. Gen. Laws 2656, 2656. However, only Mills County voters confirmed the creation of the District. Request Letter, *supra* note 1, at 2. Thus, we presume the boundaries of the District and the County are co-extensive.

Article XVI, section 59 of the Texas Constitution provides for the creation of conservation and reclamations districts with the authority to levy and collect property taxes necessary for the payment of bonds and maintenance of the district. TEX. CONST. art. XVI, § 59(b)–(c). Pursuant to this authority, the Sixty-ninth Legislature enacted House Bill 2487 (the "Act") creating the District. *See* Act of May 26, 1985, 69th Leg., R.S., ch. 779, § 1, 1985 Tex. Gen. Laws 2656. The Act authorizes the District to collect fees, borrow money, issue bonds, and levy taxes—for payment of bonds and operation and maintenance expenses—if approved by the residents of the District at an election held for that purpose. *See id.* §§ 43, 60–62, 73, at 2661, 2663–65.

You inform us that the District requests and receives all of its operation and maintenance funding from the County in apparent reliance on sections 30 and 59 of the Act. *See* Request Letter, *supra* note 1, at 1, 2. Section 30 of the Act provides that "[t]o carry out any purposes or powers under this Act, the [D]istrict may apply for, accept, receive, and administer gifts, grants, loans, and *other funds from any source*." Act of May 26, 1985, 69th Leg., R.S., ch. 779, § 30, 1985 Tex. Gen. Laws 2656, 2659 (emphasis added). Section 59 of the Act provides that payment of the District expenses "may be made from money obtained from the sale of bonds . . . or out of taxes, fees, or *other revenues*" of the District. *Id.* § 59(b), at 2663 (emphasis added). You explain that because the

---

[1]*See* Letter from Honorable Keri Roberts, Mills County Attorney, to Honorable Greg Abbott, Attorney General of Texas, at 1, 2 (Aug. 24, 2007) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

District does not levy taxes,[2] issue bonds, or collect fees, the "County apparently is being used as [the District's] 'other revenue.'" Request Letter, *supra* note 1, at 3. Thus, you specifically ask the following three questions:

> **[1]** Is obtaining 100% of [the District's] operating and maintenance expense solely from 'other revenue' in compliance with what the legislature intended? **[2]** If yes, may the County budget funds from its general revenue to fund the District if the Commissioners Court finds the expenditure to be for a public purpose under article III, section 52 of the Texas Constitution? **[3]** And if so, would such an expenditure be consistent with article V, section 18 of the Texas Constitution?

*Id.* (numbers added).

The District, like other water conservation and reclamation districts, is a political subdivision of the state, separate and distinct from the County. *See* TEX. CONST. art. XVI, § 59(b); Act of May 26, 1985, 69th Leg., R.S., ch. 779, § 3(c), 1985 Tex. Gen. Laws 2656, 2656; *see also Harris County Flood Control Dist. v. Mann*, 140 S.W.2d 1098, 1101 (Tex. 1940) (holding that the article XVI, section 59 Harris Flood Control District is a separate and distinct political entity from Harris County). The District has the powers granted by the Act and by other general law specified by the Act—Water Code chapters 51 (relating to water control and improvement districts), 52 (relating to underground conservation districts),[3] and 54 (relating to municipal utility districts)—to the extent they are consistent with the Act. *See* Act of May 26, 1985, 69th Leg., R.S., ch. 779, § 29(c), 1985 Tex. Gen. Laws 2656, 2659; *see also Tri-City Fresh Water Supply Dist. No. 2 v. Mann*, 142 S.W.2d 945, 946 (Tex. 1940) (stating that a special water district may exercise only those powers that are expressly granted or clearly implied from the express powers).

As you note, the District is expressly authorized to collect fees, borrow money, issue bonds, levy taxes, and use the revenues from these sources to pay its authorized operating and maintenance expenses. *See* Act of May 26, 1985, 69th Leg., R.S., ch. 779, §§ 43, 60–61, 73, 1985 Tex. Gen. Laws 2656, 2661, 2663, 2665; *see also, e.g.*, TEX. WATER CODE ANN. §§ 36.201 (Vernon 2000) (groundwater conservation district's authority to levy taxes), 36.205 (Vernon Supp. 2007)

---

[2]You state that "[a] confirmation election was held but the voters only approved joining the district. There has never been another election to decide[] whether the District can tax." Request Letter, *supra* note 1, at 1.

[3]Section 29(c) of the Act provides that the District has the powers and functions under chapter 51 of the Water Code to the extent necessary to carry out the District's authority relating to underground water. *See* Act of May 26, 1985, 69th Leg., R.S., ch. 779, § 29(c), 1985 Tex. Gen. Laws 2656, 2659. And section 46 of the Act grants the District underground water powers. *Id.* § 46, at 2661. In 1995, the Legislature repealed Water Code chapter 52, which governed underground water conservation districts and enacted chapters 35 (dealing with groundwater studies) and 36 (governing groundwater conservation districts). *See* Act of May 29, 1995, 74th Leg., R.S., ch. 933, §§ 2, 6, 1995 Tex. Gen. Laws 4673, 4674–79 (enacting chapter 35); 4679–4701 (enacting chapter 36); 4701 (repealing chapter 52 of the Water Code).

(groundwater conservation district's authority to set fees).[4] But the District is also expressly permitted to use for its authorized operating expenses other revenues and funds received from any source. *See* Act of May 26, 1985, 69th Leg., R.S., ch. 779, §§ 30, 59(b), 1985 Tex. Gen. Laws 2656, 2659, 2663. The Act does not limit the District to funding its operation and maintenance expenses—or a percentage of such expenses—from any particular source. Nor have we found any other provision that imposes such limits on the District. In light of the fact that the Legislature created the District as a separate political subdivision empowered to impose taxes and fees and collect other revenues generated from the District's operations, it is reasonable to presume that the Legislature intended that the District pay its expenses with these authorized taxes, fees, and similar types of revenues. *See id.* § 59(b), at 2663 ("Payments may be made from money obtained from the sale of bonds issued by the district or out of taxes, fees, or *other revenues of the district*.") (emphasis added); *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003) ("When general words . . . follow specific and particularized enumeration of powers . . . , we treat the general words as limited and apply them only to the same kind or class of powers as those expressly mentioned."). But, in light of the broad wording of sections 30 and 59 and in the absence of any express limitations, we cannot say as a matter of law that the District may not fund all of its maintenance and operation expenses with revenues received from other sources, including funds received from the County, assuming the source can legally provide the funds. *See* TEX. GOV'T CODE ANN. § 311.021(1), (3 ) (Vernon 2005) ("In enacting a statute, it is presumed that . . . compliance with the constitutions of this state and United States is intended" and "a just and reasonable result is intended").

Whether the County is authorized to pay for all of the District's maintenance and operation expenses is a separate inquiry. Because a county's authority is circumscribed, before determining whether the County's funding of the District's maintenance and operation expenses is consistent with article III, section 52[5] and article V, section 18,[6] we must first determine whether the County is even authorized to pay for these expenses. *See* Tex. Att'y Gen. Op. No. JC-0444 (2001) (considering whether the Legislature authorized a county to pay for a special water district's confirmation election expenses before addressing constitutional constraints on such county action).

---

[4]*See supra* note 3.

[5]Consistent with article III, section 52(a) of the Texas Constitution, a county may transfer funds to another political subdivision only to accomplish a county purpose. *See* TEX. CONST. art. III, § 52(a) (prohibiting the Legislature from authorizing political subdivisions to lend their credit); *Mann*, 140 S.W.2d at 1104 (holding that under article III, section 52, no funds of Harris County can be pledged or used to pay bonds of Harris County Flood Control District); Tex. Att'y Gen. Op. No. JC-0036 (1999) at 6 ("a commissioners court may expend county funds to improve a city street if . . . such expenditure serves a county purpose").

[6]Consistent with article V, section 18(b), the commissioners court may exercise authority only over matters pertaining to county business. *See* TEX. CONST. art. V, § 18(b) (stating that a commissioners court "shall exercise such powers and jurisdiction over all county business as is conferred by this Constitution and the laws of the State"); *Mann*, 140 S.W.2d at 1104 (discussing implied prohibition in article V, section 18 against the Legislature requiring a commissioners court to perform functions other than "county business"); Tex. Att'y Gen. Op. No. JC-0036 (1999) (concluding that county improvement of a city street that is an integral part of or connecting link with a county road constitutes "county business").

A county commissioners court may exercise only those powers expressly granted by the Texas Constitution or the Legislature together with such implied powers as are necessary to accomplish the powers expressly conferred. TEX. CONST. art. V, § 18(b); *City of San Antonio*, 111 S.W.3d at 28; *Canales v. Laughlin*, 214 S.W.2d 451, 453 (Tex. 1948); *Anderson v. Wood*, 152 S.W.2d 1084, 1085 (Tex. 1941); *La.-Pac. Corp. v. Newton County*, 149 S.W.3d 262, 263 (Tex. App.—Eastland 2004, no pet.). Thus, to determine whether the County is authorized to fund the District's expenses, we must look for affirmative authority for such action.

No constitutional provision[7] or statute expressly authorizes the County to fund the District's maintenance and operation expenses. For instance, no provision in chapter 81 of the Local Government Code, which sets forth the general duties and powers of a county commissioners court, authorizes such expenditures. While section 81.032 of the Local Government Code authorizes the commissioners court to accept gifts and grants on behalf of the county and for county purposes, no similar provision broadly authorizes the commissioners court to *make* gifts and grants. *See* TEX. LOC. GOV'T CODE ANN. § 81.032 (Vernon Supp. 2007). And, again, section 30 of the Act authorizes the *District* to "apply for, accept, receive, and administer gifts, grants, loans, and other funds available from any source." Act of May 26, 1985, 69th Leg., R.S., ch. 779, § 30, 1985 Tex. Gen. Laws 2656, 2659. Section 30 does not authorize the County to provide funds to the District. *See id.* Similarly, section 59 of the Act authorizes the *District* to pay its operation expenses, not the County. *See id.* § 59, at 2663. And we have not found, and you do not direct us to, another provision that authorizes the County to pay for or provide funds to pay for the District's maintenance and operation expenses.

Additionally, we do not believe that the County is impliedly authorized in these circumstances to fund the District's maintenance and operations expenses for two reasons. First, based on the information provided, such an implication is unnecessary to accomplish an expressly assigned duty or authority of the *County*. Unlike a county's broad express statutory authority with respect to roads, for instance, we are unaware of similar, general county authority with respect to water and wastewater. *See, e.g.*, TEX. TRANSP. CODE ANN. ch. 251 (Vernon 1999 & Supp. 2007) (county road law). Nor is such authority granted specifically to Mills County. Here, consistent with article XVI, section 59, the Act expressly grants the *District* the authority to generally acquire or improve facilities and undertake other projects for the collection, conservation, treatment, and transfer of water and wastewater. *See* Act of May 26, 1985, 69th Leg., R.S., ch. 779, §§ 3 (legislative findings and declaration), 29 (general power of authority), 46 (underground water powers), 1985 Tex. Gen. Laws 2656, 2656, 2659, 2661. And the Act expressly grants the *District* the necessary power—to borrow money, impose taxes and fees, and obtain other funds—to pay for those projects and the District's operations. *See id.* §§ 43 (fees and charges), 46 (sell and distribute water), 60 (borrowing money), 61 (issuing bonds), 73 (levy of taxes), at 2661, 2663, 2665; *see also* TEX. WATER CODE ANN. § 36.205 (Vernon Supp. 2007) (authority to set fees). (Among these

---

[7]If a constitutional provision authorized the County to fund the District's operation and maintenance expenses, then the County's actions could not violate article III, section 52 or article V, section 18 of the Texas Constitution. *Cf. Mann*, 140 S.W.2d at 1102 (stating that if donation of taxes was authorized by the state constitution, the donation cannot violate constitutional provisions limiting state expenditures).

expressly granted powers is the power to levy taxes to pay specifically the maintenance and operation expenses of the District. *See* Act of May 26, 1985, 69th Leg., R.S., ch. 779, § 73(b), 1985 Tex. Gen. Laws 2656, 2665.) Given the express statutory scheme granting the District the necessary power to accomplish its constitutional and statutory objectives, there is no basis for implying County authority to pay the District's expenses. *Accord* Tex. Att'y Gen. Op. No. JC-0444 (2001) at 3 (concluding that given the express statutory scheme for payment of groundwater conservation district's election expenses, county lacked express or implied statutory authority to pay for district's confirmation election expenses).

Second, we do not believe the County's authority to fund the District's maintenance and operation expenses may be implied because when the Legislature intends that a political subdivision contribute funds to a water district, it generally provides for the contribution expressly. *See* TEX. WATER CODE ANN. §§ 51.166 (Vernon 2000) (authorizing a district to solicit cooperation, donations and contributions from other agencies and political subdivisions), 51.168 (authorizing contributor political subdivision to contract with district to contribute to the cost of drainage construction, flood-control or water-supply improvements, or land-elevation construction and contribute in proportion to the benefit received from the project by the contributor). And, significantly, the Legislature specifies the particular purpose of the contribution and the amount, which must relate to the benefit obtained by the contributor. *See id.* § 51.168.

Because we conclude that the County lacks express authority or implied authority in the present circumstances to fund the District's maintenance and operation expenses, we do not reach your remaining questions as to whether such expenditures would violate the article III, section 52 prohibition against lending of credit or the article V, section 18 implied prohibition against a county engaging in non-county business.

## S U M M A R Y

The Fox Crossing Water District (the "District"), a special-law conservation and reclamation district, is authorized to impose taxes and fees and collect other revenues generated by its operations. No statutory provision, however, prohibits the District from funding all its operation and maintenance expenses from other revenues such as grants, gifts, loans or other revenues received from other sources, including Mills County, Texas (the "County"), if the source can legally provide the funds. But no constitutional provision or statute authorizes the County to pay for all of the District's maintenance and operation expenses.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee